**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

SAMSUNG ELECTRONICS CO.,
LTD.,

    Plaintiff,

v.                      Civil Action No. 3:05cv406

RAMBUS INC.,

    Defendant.

**MEMORANDUM OPINION**

In this action, Samsung Electronics Co., Ltd. ("Samsung") seeks a declaratory judgment that, _inter alia_, four patents held by Rambus, Inc. ("Rambus") are unenforceable by virtue of the doctrines of unclean hands, equitable estoppel, patent misuse, waiver, laches, and laches in the United States Patent and Trademark Office ("PTO").[1]  Rambus has moved to transfer this action to the Northern District of California where it is currently

---

[1] The four patents are: (1) U.S. Pat. No. 5,953,263 ("the '263 Patent"); (2) U.S. Pat. No. 5,954,804 ("the '804 Patent"); (3) U.S. Pat. No. 6,032,214 ("the '214 Patent"); and (4) U.S. Pat. No. 6,034,918 ("the '918 Patent").  First Amended Complaint ("FAC")¶ 1. Samsung also asserts that these patents are invalid.  Rambus has filed counterclaims for infringement of two of those patents.

As part of its motion to transfer, Rambus has submitted evidence of a covenant not to sue Samsung on the '804 and '214 patents, _see_ Declaration of Gregory Stone, Ex. M.  Counsel for Rambus represented at oral argument that the covenant not to sue was intended to be complete and unequivocal, but Samsung contends that this covenant would not protect Samsung from litigation over those two patents in other fora.

involved in patent infringement litigation with Samsung and Hynix Semiconductor, Inc. ("Hynix") with respect to these four patents, and others.    For the reasons set forth below, the motion to transfer is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    General Background

Rambus develops and licenses technology to companies that manufacture semi-conductor memory devices.  In 1990, Rambus filed United States Patent Application Serial Number 07/510,898 with claims directed to a computer memory technology known as Dynamic Random Access Memory.  The PTO determined that this application covered several independent inventions, and thus issued an eleven-way restriction requiring Rambus to elect one invention to pursue in its application.  In response, Rambus filed numerous divisional and continuation applications based on its original application. The ensuing patents are directed to Dynamic Random Access Memory technology ("DRAMs"), Rambus DRAMs ("RDRAMs"), Synchronous Dynamic Random Access Memory ("SDRAM"), and Double Data Rate Synchronous Dynamic Random Access Memory ("DDR-SDRAM").  <u>Rambus, Inc. v. Infineon Tech. AG,</u> 222 F.R.D. 280, 282 (E.D. Va. 2004).[2]

---

[2] These technologies are described in considerable detail at <u>Rambus, Inc. v. Infineon Tech. AG</u>, 164 F.Supp.2d 743, 747-48 (E.D. Va. 2001).  A detailed description of the technologies, however, is not necessary to the resolution of this motion.

Rambus describes itself as a technology company because it does not manufacture any of the DRAM devices.  Instead, Rambus relies on licensing its technology patents as the source of its corporate revenues.

## B.   Rambus' Patent Litigation and Enforcement Policies and Practices

As of early 1998, Rambus anticipated that it would soon initiate patent litigation against several specifically identified DRAM manufacturers. Consequently, beginning in early 1998 and continuing through 1999 and 2000, Rambus developed and refined a patent licensing and litigation strategy. Rambus v. Infineon Tech. AG, 222 F.R.D. at 293-94.  That licensing and litigation strategy was implemented in 1998 and was pursued in 1999 and 2000.  Id.[3]

As of March 1998, Rambus had identified the Eastern District of Virginia as a desirable location in which to prosecute patent actions against DRAM manufacturers that would not take licenses for technology which Rambus had patented or was seeking to patent. DTX3680.  From early 1998, Samsung was considered a possible patent litigation target.  DTX3681.  Other potential targets were Hitachi,

_____

[3] To understand the background against which this motion must be decided, it is appropriate for the Court to take judicial notice of the content of testimony given and exhibits admitted in the trial of the unclean hands and spoliation issues conducted in Rambus, Inc. v. Infineon Tech. AG, in February and March  2005. Citations to testimony will be made to the transcript of those proceedings and citations to the exhibits will be admitted exhibit numbers (e.g. DTX___).

Hyundai Electronics Corporation (now Hynix) and Siemens (now Infineon). DTX3691.

In fact, by 1999, Rambus had developed a rather sophisticated matrix for use in identifying target DRAM companies for litigation. That matrix accorded a score and a ranking to each listed target DRAM manufacturer. By then, Rambus also had identified the potential litigation venues and assessed the desirability of each. DTX3675. Samsung was among those DRAM manufacturers receiving a high score on the matrix, making it a likely litigation target. The Eastern District of Virginia was among the three preferred venues for patent litigation against the targeted DRAM manufacturers. The other two preferred venues were the Northern District of California and the District of Delaware.

In October 1999, Rambus implemented its licensing and litigation plan against Hitachi. DTX5380. By January 2000, Rambus, had been unsuccessful in concluding, on terms satisfactory to it, licensing negotiations with Hiatchi. Therefore, Rambus instituted a patent infringement action against Hitachi in the District of Delaware. DTX3673. That action was subsequently transferred to the Northern District of California. The litigation against Hitachi was settled on June 22, 2000.

On June 23, 2000, Rambus asserted the '804 patent against Infineon. DTX167. As envisioned by Rambus' licensing and

4

litigation strategy, when a settlement did not occur in short order, Rambus initiated an action against Infineon in this Court on August 8, 2000 (styled Rambus v. Infineon Tech. AG).  The patents-in-suit in that action were the same as those that are at issue in this action.

## C.   The Samsung/Rambus License Negotiations and Termination

Rambus executed a patent license agreement with Samsung in October 2000.  Under that agreement, Samsung was permitted to use certain Rambus technology, including that which is the subject of all four patents-in-suit in this action, in the manufacture of DRAM and other products.  Under the original Samsung/Rambus license executed in October 2000, Samsung was obligated to pay a running royalty that was a percentage of sales revenue for SDRAM, DDR-DRAM and controller products made by Samsung.[4]

In the fall of 2000, and into 2001, the Rambus/Infineon litigation progressed, and the case went to trial in April 2001. Under circumstances not here pertinent, judgment of non-infringement was entered against Rambus on its patent claims and a verdict was returned against Rambus on Infineon's fraud counterclaims.[5]

---

[4] Hearing Transcript, August 23, 2005, p. 55 (hereafter "August 23 Tr., p. ___.")

[5] Other Infineon counterclaims were disposed of in various ways, not here pertinent.

5

Also, in 2001, Samsung and Rambus entered into an amendment of the original license agreement.  Pursuant to the amended agreement, royalties of SDRAM and DDR-DRAM products were payable on a fixed installment basis and royalties on controller products were paid as a percentage of sales (running royalty).  August 23 Tr., pp. 55-56.

In 2003, for reasons not pertinent here, the United States Court of Appeals for the Federal Circuit remanded the case to this Court for further proceedings.  The proceedings on remand were delayed by further appellate proceedings, but began in earnest in January 2004 and the case was set for trial in May 2004 but was delayed until February 2005.

In July 2004, Rambus and Samsung began to discuss: (a) differences of opinion respecting royalties that were due; (b) Rambus' desire for an audit of Samsung sales data; and (c) potential renewal of the original license agreement which was due to expire on June 30, 2005.[6]  Over the next several months, those discussions proceeded with both parties mindful that Rambus was once again in litigation with Infineon in the Eastern District of Virginia and also was in litigation with Hynix and others in the Northern District of California.  Samsung Ex. 1.

---

[6] The 2000 license agreement contained a provision requiring the parties to undertake good faith negotiations for renewal.

6

On March 21, 2005, Rambus and Infineon announced the settlement of the action filed by Rambus against Infineon in this Court.  The settlement took the form of broad licensing agreements.  The next day, March 22, 2005, Rambus notified Samsung that it was terminating the 2001 amendment to the 2000 licensing agreement in accordance with the terms of the agreement.  The event cited as the basis for the termination was the Rambus/Infineon settlement.  Rambus Ex. 2.

Samsung responded with a request for information so that it could determine the extent to which, if any, the Rambus/Infineon licensing agreement reached in the settlement provided Samsung any rights under the most favored nation provision of its original October 2000 licensing agreement.  Rambux Ex. 3.  Discussions on those topics continued, along with efforts to renew the license between Rambus and Samsung.

In the course of those dicussions, Rambus advised that, in its pending antitrust case against Hynix and Micron, Rambus had discovered "some new issues related to Samsung."  Samsung Ex. 2.  Rambus then informed Samsung that, in view of those developments and considering the short time before expiration of the license agreement (June 30, 2005), Rambus had concluded that it would not be able to reach a renewal of the five-year patent license with Samsung.  Id. Rambus also expressed a desire to avoid any further

7

damage to its relationship with Samsung and, to that end, suggested on "a one year Standstill Agreement between the parties." Id.

Under the Standstill Agreement, each party would agree not to file an action against the other for a period of one year beginning on July 1, 2005. This was defined as "the Standstill Period." During the Standstill Period, Samsung would pay royalties calculated on the royalty rate in the Rambus/Infineon settlement agreement but based on Samsung's DRAM revenue. During the Standstill Period, the parties would attempt to negotiate a renewal of the five-year patent license agreement. Id.

On June 3, 2005, Samsung responded with a counter-proposal that included the same Standstill Agreement but different financial terms. Samsung Ex. 3; August 23 Tr., p. 63. Neither Rambus' nor Samsung's proposal contained a provision allowing one party the right to file suit first or to select a venue. August 23 Tr., p. 70, Samsung Ex. 2 and Samsung Ex. 3. The parties scheduled a meeting in California on June 6, 2005 to discuss the payment terms that would obtain during the standstill period.

However, at that meeting, Rambus had a different agenda. It presented Samsung with a letter pursuant to which Samsung would agree not to initiate legal action respecting any Rambus patents until the earlier of (a) Rambus having filed litigation first in the venue of its choice; or (b) July 11, 2005 by 5:00 p.m. This

8

demand was presented by John B. Danforth, Senior Vice President and General Counsel of Rambus, who, at the time, advised Samsung's Mr. Jay Shim that he had been directed by Rambus management to avoid any further litigation in the Eastern District of Virginia and to assure that Rambus controlled "the venue in litigating this matter."[7]   Danforth explained that that was the reason for this demand.

Mr. Shim, recessed the meeting to discuss the matter with his management in Seoul and returned to advise Mr. Danforth that Samsung would not sign the demand in Samsung Ex. 4.   Thereupon, Mr. Danforth issued a letter terminating the license agreement immediately.   Samsung Ex. 5.   Mr. Danforth also advised Mr. Shim that Rambus would institute litigation against Samsung that day. In fact, Mr. Danforth, using a cellular telephone, called his counsel in Mr. Shim's presence, and instructed that the already-prepared complaint be filed in the Northern District of California. It was filed very shortly thereafter.   The next day, June 7, 2005, Samsung filed this action in this Court.

**D.   A Summary of the Rambus/Infineon Litigation in This Court**

Because of the extended litigation in this Court between Rambus and Infineon over the patents that are at issue in the declaratory judgment sought by Samsung and because of the nature of

---

[7] August 23 Tr., pp. 74-75.

Samsung's complaint, it is necessary to recount the history of the litigation between Rambus and Infineon in this Court.   Like Samsung, Infineon was identified in the early stages of Rambus' licensing and litigation strategy as a potential target for patent litigation.   And, as explained above, that strategy included a careful and deliberate selection of the United States District Court for the Eastern District of Virginia as one of three preferable venues for Rambus to conduct patent litigation against the litigation targets it identified as early as 1998 and against which it pursued its licensing and litigation strategy in 1999 and 2000.

In fulfillment of its strategic objectives, Rambus initiated the patent infringement action against Infineon in this Court in August 2000.   Extensive discovery was taken, a claim construction opinion was issued, summary judgment decisions were made, and a multi-day final pretrial conference was held to deal with the admissibility of exhibits and deposition testimony.   The first trial lasted approximately two weeks.   Thereafter, extensive post-trial briefing was conducted and post-trial decisions were made. The judgment was appealed to the United States Court of Appeals for the Federal Circuit which affirmed in part, reversed in part, and remanded for further proceedings.

Thereafter, additional discovery was held.  The issue of spoliation was decided preliminarily and resulted in an order piercing the attorney-client and work-product privileges.  Rambus sought review of this order by way of Petition for a Writ of Mandamus in the United States Court of Appeals for the Federal Circuit.  The petition was denied; and, thereafter, additional discovery was had on the spoliation issue, numerous summary judgment motions were decided and numerous motions *in limine* were resolved.  In a multi-day final pretrial conference, rulings were made on evidence offered on all issues to be tried, except damages.[8]

At the suggestion of the parties, the trial was divided into stages.  The first stage was the bench trial of Infineon's defense of unclean hands and a corollary evidentiary proceeding respecting the spoliation of evidence as to which dismissal of Rambus' action was requested as a penalty for spoliation.  Infineon also asserted the fact of spoliation as one aspect of its unclean hands defense.[9]

---

[8] The trial on remand was originally set for May 2004, but the interlocutory appeal pursued by Rambus and the discovery on spoliation that followed the unsuccessful appellate proceedings made it necessary to delay the trial until February and March 2005.

[9] It was decided that, if an adverse decision were rendered against Infineon on its unclean hands defense or the issue of spoliation sanctions, there would follow in short order a trial of Rambus' patent infringement claims and Infineon's counterclaims. That trial was set for March 2, 2005.

The bench trial of the unclean hands defense and the evidentiary hearing on the motion for the sanction of dismissal because of Rambus' alleged spoliation was held over a period of three days.  Several hundred exhibits were introduced and the testimony of numerous witnesses was received in person and on videotape.  Proposed findings of facts and conclusions of law were submitted.  The issues were argued and, at the end of the trial, the following decision was issued from the bench:

> I conclude, on the basis of the record and the law, that Infineon has proved, by clear and convincing evidence that Rambus is guilty of and liable for unclean hands that bar its access to this Court . . . and I have concluded that [Infineon] has proved by clear and convincing evidence a spoliation that warrants dismissal of this action as the only appropriate sanction after having considered the alternatives.

Trial Transcript, Volume 6, pp. 1138-39 (March 1, 2005).

**E.   The Actions Pending in the Northern District of California That Involve, in Part, the Patents-In-Suit in This Action**

Rambus is involved in several other actions that are pending in the Northern District of California.  Specifically, in 2000, Hynix Semiconductor, Inc. (formerly Hyundai) filed a civil action against Rambus (Hynix Semiconductor, Inc. v. Rambus, Inc., Case No. CV002095RMW (N.D. Cal.) ("Hynix v. Rambus").  Rambus filed an antitrust action in 2005 against Hynix and others.  It was styled Rambus Inc. v. Hynix Semiconductor, Inc., et al., Case No.

CV0500334RMW ("Rambus v. Hynix").   Under the circumstances
described in Section C above, Rambus filed Rambus Inc. v. Samsung
Electronics Co. Limited, et al., Case No. CV-02298RMW (N.D. Cal.)
("Rambus v. Samsung") on June 6, 2005.  Also, on June 6, 2005, when
Rambus filed Rambus v. Samsung, it moved to add Samsung as a
defendant in Rambus v. Hynix.

The record here reflects that, in Hynix v. Rambus, a bench
trial on Hynix' defense of unclean hands is set to begin on October
17, 2005 with a patent infringement trial to begin on January 30,
2006.   The patent cases in the Northern District of California
involve issues in addition to the unclean hands issue and they
involve patents in addition to the patents-in-suit in this action.

In Hynix v. Rambus, Hynix moved to dismiss Rambus' patent
infringement counterclaims for unclean hands on grounds of
collateral estoppel based on this Court's bench ruling in Rambus v.
Infineon.   In the absence of an opinion embodying this Court's
findings of fact and conclusions of law, the Northern District of
California held that the required elements for collateral estoppel
could not be established by Hynix.

With this background in mind, Rambus' motion to transfer venue
will be considered.

## DISCUSSION

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[10]  Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh, Inc., 487 U.S. 22, 29 (1988)(quoting Van Dusen v. Barrack, 376 U.S. 612 (1964)).  The moving party bears the burden of demonstrating that a transfer of venue is warranted under Section 1404(a).  The Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc., 2005 WL 1048748, *1 (E.D. Va. 2005).

In exercising its discretion under the statute, it is necessary to "consider and balance" a number of factors, including:

> (1) ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law; and (7) the interest of justice.

---

[10] Transfer is only proper when the case could have been filed in the transferee forum at the outset.  Samsung does not argue that venue would be improper in the Northern District of California.

One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp., 312 F.Supp.2d 824, 828 (E.D. Va. 2004) (citing BHP Int'l Inv., Inc. v. Online Exch., 105 F.Supp.2d 493, 498 (E.D. Va. 2000)).  The statute provides no guidance as to the weight that should be given to the various factors, and thus "much necessarily must turn on the particular facts of each case" and "the trial court must consider all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."  15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3847 at 370.  Depending on the circumstances of the case, "the interest of justice may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction."  Wright, Miller & Cooper, § 3854 at 439-440.  The principal factors to consider, however, are plaintiff's choice of forum, witness convenience, access to sources of proof, party convenience, and the interest of justice. Koh v. Microtek Int'l, Inc., 250 F.Supp.2d 627, 633 (E.D. Va. 2003).[11]

---

[11] The ease of access to sources of proof refers principally to the discovery component of litigation and is considered as a party convenience factor.  The cost of obtaining attendance of witnesses and the availability of compulsory process are components of both party convenience and the interest of justice factors.

**A.   Plaintiff's Choice of Forum**

The first factor to be considered is the level of deference that should be given to Samsung's choice of this forum in which to adjudicate its complaint for declaratory judgment.  "In analyzing the propriety of a transfer, plaintiff's choice of forum is typically entitled to substantial weight; however, if 'a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight.'"  Telepharmacy Solutions, Inc. v. Pickpoint Corp., 238 F.Supp.2d 741, 743 (E.D. Va. 2003) (quoting Cognitronics Imaging Sys. v. Recognition Research Inc., 83 F.Supp.2d 689, 696 (E.D. Va. 2000)).  When the plaintiff's choice of forum is neither the nucleus of operative facts, nor the plaintiff's home forum, the plaintiff's choice is accorded less weight.  Intranexus, Inc. v. Siemens Medical Solutions Health Services Corp., 227 F.Supp.2d 581, 583 (E.D. Va. 2002).  But, even then, the plaintiff's choice of forum is certainly a relevant consideration so long as there is a connection between the forum and the plaintiff's claim that reasonably and logically supports the plaintiff's decision to bring the case in the chosen forum.

Samsung is incorporated in South Korea and its principal place of business is there.  Its only office in the United States is in Washington, D.C.  Thus, the Eastern District of Virginia is not the

16

home forum for Samsung.  In the venue assertions in its complaint, Samsung alleges, <u>inter</u> <u>alia</u>, that "a substantial part of the events or omissions that gave rise to the claims asserted in this complaint occurred in this judicial district."  FAC, ¶6.  Rambus does not agree that a "substantial" part occurred here.[12]

Considering that Samsung has neither its headquarters nor its principal place of business in this district, but that some of the factual nexus for the claims asserted in the FAC occurred in this district, it is appropriate neither to accord Samsung's choice of forum great weight nor to unduly minimize that election.  Instead, Samsung's choice of forum will be respected as legitimate and will be considered in striking the balance respecting transfer.

**B.   Convenience of the Parties**

Rambus asserts that the convenience of the parties demands a transfer of venue to the Northern District of California.[13]  Samsung does not dispute that the Northern District of California is

---

[12] In its Answer, Rambus merely responds that paragraph 6 of the First Amended Complaint sets forth legal conclusions requiring no response.  And, in its brief, Rambus merely asserts that "the vast majority of the acts alleged in Samsung's Complaint occurred in the Northern District of California, not in this District." Memorandum In Support Of Motion By Defendant Rambus Inc. To Transfer Action, p. 1 (hereafter "Rambus Opening Br., p. ___.")

[13] The party convenience factor includes assessment of the ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process.

Rambus' home district.  Thus, the Northern District of California can be considered as a convenient forum for Rambus.

However, through 1998 and 1999, and even into early 2000, Rambus and its outside counsel carefully planned Rambus' patent litigation and, in so doing, Rambus and its counsel put considerable effort into identifying potentially advantageous forums in which to conduct patent litigation against specifically identified targets.  After extensive and meticulous study and deliberation, Rambus determined that the Eastern District of Virginia was among the three best locations for conducting Rambus' patent litigation.  And, among the priority potential targets for that litigation was Samsung.

Far from being an inconvenience, the prospect of litigating in this district was an attractive option for Rambus.  In fact, this forum did not become inconvenient to Rambus until it experienced adverse litigation results in this district.  The record here shows that a principal concern of Rambus in terminating Samsung's license and in negotiating a Standstill Agreement was the avoidance of further litigation in this district in which Rambus had sustained an adverse litigation outcome.

Samsung is headquartered in Seoul and its American office is in Washington, D.C.  The proximity of Washington, D.C. weighs in favor of this forum as a convenient one for Samsung, but not

18

heavily so, considering that the company is incorporated in South Korea where much of its staff appears to be situated. On balance, Samsung does not appear to be clearly convenienced or inconvenienced by proceeding either in the Northern District of California or this forum.

The ease of access to sources of proof, the cost of securing the attendance of witnesses at deposition and trial, and the availability of compulsory process for trial in this district were not factors that Rambus considered troublesome in the least when it identified this district as a desirable forum for conducting patent litigation several years ago.

Nor do any of those factors appear to have impeded, in any significant way, the litigation that Rambus initiated against Infineon in this district in 2000 and that proceeded through two trials here from 2000 until a few months ago.

It is true that, at the bench trial of the unclean hands and spoliation sanction issues here in February 2005, most testimony was presented by videotape. That, however, was at Rambus' election, even though the Court urged otherwise. But, even that did not impede a full, and efficiently presented, trial on the merits of those issues.

The simple truth is that the record on the unclean hands and spoliation issues is rather fully developed. Indeed, Samsung is

satisfied to present its case-in-chief on those issues by using the record in <u>Rambus v. Infineon</u> made in the February bench trial. Whether Rambus needs to, or can, supplement that record remains to be seen, but if that should be appropriate, it can be done quickly.

Looking beyond that issue to the counterclaims, Rambus and Samsung have been focusing on the Rambus technology and Samsung's products for years.   Samsung Ex. 1.   Whatever needs to be accomplished to try Rambus' infringement case is largely a matter of expert witnesses.  That work can proceed even while the unclean hands and spoliation case is being tried, if, as Rambus seems to urge, an infringement trial is the necessary course to follow.[14]

Rambus has offered no evidence that the cost of obtaining attendance of witnesses is a material factor in deciding its motion. Hence, that factor does not militate in favor of transfer.

It is true that Rambus laments the unavailability of compulsory process.  But, Rambus has not established that the witnesses who are beyond compulsion will not appear here voluntarily if Rambus prevails on them to do so.  As explained in Section C below, that is Rambus' burden and it has not been met.

Viewed realistically, Rambus' recent claim of inconvenience has a hollow ring.   There is no reason, other than having

---

[14] Samsung has moved for partial summary judgment and that will be argued on September 27.

experienced adverse results, that litigation in this district now is any less convenient for Rambus than it was when Rambus was planning its licensing and litigation strategy.  And, a previous adverse litigation outcome is not a factor to be considered in the convenience calculus.

On this record, then, Rambus has not satisfied its burden on the party convenience factor.[15]

## C.   Convenience of the Witnesses

The convenience of the witnesses is of considerable importance in determining whether a transfer of venue is appropriate under Section 1404(a).  When reasonably possible, live testimony is preferred to other means of presenting evidence.  Ramsey v. Fox News Network, LLC, 323 F.Supp.2d 1352, 1356 (N.D. Ga. 2004). Typically, however, a distinction is drawn between party and non-party witnesses.  "Party witnesses are the parties themselves and those closely aligned with a party, and they are presumed to be more willing to testify in a different forum, while there is no

---

[15] Several decisions on motions to transfer venue under Section 1404(a) incorporate a comparative approach in analyzing party convenience.  While that approach is often helpful, it is important to remember that the "defendant moving for transfer must show that the original forum is inconvenient for it and that plaintiff would not be substantially inconvenienced by a transfer."  Wright, Miller, and Cooper § 3849 at 407-408.  As the moving party, Rambus bears the burden of demonstrating that the Eastern District of Virginia is an inconvenient forum in which to litigate, not simply that the Northern District of California would be more convenient.

such presumption as to non-party witnesses." Id.  The convenience of non-party witnesses should be afforded greater weight in deciding a motion to transfer venue.  Koh, 250 F.Supp.2d at 637.

"The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." Id. at 636.  Naturally, in contrast to witness testimony that is merely cumulative, "greater weight should be accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue." Id.  Witness convenience is "not merely a battle of numbers favoring the party that can provide the longest list of witnesses it plans to call." Anderson v. Century Products Co., 943 F.Supp. 137, 149 (D.N.H. 1996).

Additionally, the moving party must demonstrate "whether that witness is willing to travel to a foreign jurisdiction." Thayer/Patricof Education Funding, LLC v. Pryor Resources, Inc., 196 F.Supp.2d 21, 33 (D.D.C. 2002).  Merely stating that potential witnesses reside beyond a forum's subpoena power does little to assist the court in weighing the convenience of the witness and the necessity of compulsory process.  See id.  When the "appearance of witnesses can be secured regardless of the forum's location through

22

court order or persuasion by an employer who is a party to the action, this factor becomes less important." Anderson, 943 F.Supp. at 149.

Although live testimony is the preferred mode of presenting evidence, when non-party witnesses are unavailable to give live testimony, videotaped depositions often are sufficient. Somewhat less weight is given to witness inconvenience when a party is unable to demonstrate with any particularity that videotaped deposition testimony will be inadequate, and that live testimony is critical. See Koh, 250 F.Supp.2d at 637; Acterna, LLC v. Adtech, Inc., 129 F.Supp.2d 936, 939 (E.D. Va. 2001). This is especially so when the witness is not central to the case. "[L]oss of live testimony of less central witnesses is not so great a price for honoring plaintiff's choice." Anderson, 943 F.Supp. at 149.

Samsung has represented that it is prepared to proceed in this forum by relying on the record created in Rambus v. Infineon for its case-in-chief on the unclean hands and spoliation issues, which, of course, form the backbone of its complaint. Samsung also has offered to bring any and all party witnesses to this district to give live testimony. Consequently, the convenience of Samsung's party witnesses does not seem to be an issue in assessing the convenience of the witnesses component of the test.

Rambus points to the fact that many of its key party witnesses reside within the Northern District of California, and Rambus contends that their convenience would be served by a transfer to the Northern District of California. While this is no doubt true, Rambus has not shown that these witnesses, in fact, would not travel to this district to testify, if Rambus requested them to do so and paid their expenses.

It is correct that a number of important witnesses on the issue of unclean hands and spoliation are either former Rambus employees or, in two or three instances, lawyers formerly retained by Rambus. Rambus contends that many of those witnesses might not be willing to travel across the country to testify and would not be subject to this Court's subpoena power. It is correct that a witness who resides in the Northern District of California is not subject to subpoena in this district. However, Rambus has not shown that the former employees and the formerly retained lawyers have refused to testify in this district if Rambus assumes the cost of their expense in so doing. Most of the witnesses at issue here are closely identified with Rambus or are lawyers who formerly represented Rambus who have the obligation to make themselves available to assist their former clients, if requested by Rambus to do so. Thus, the showing made by Rambus that the former employees and formerly retained lawyers reside in the Northern District of

California and are not amenable to subpoena here does not carry the day in the convenience analysis.

Moreover, it is important to note that, in Rambus v. Infineon, the trial of the unclean hands and spoliation issues was presented largely by videotaped deposition testimony of Rambus' current officers and employees, as well as the former employees and the formerly retained lawyers.  The record on these issues was fully developed.

In that proceeding, Rambus was content to have its current officers and employees, its former employees, and its formerly retained lawyers appear by videotaped deposition testimony, rather than to arrange for their live testimony.  Under these circumstances, Rambus cannot credibly be heard to argue now that videotaped deposition testimony would be an inadequate substitute for live testimony if its party witnesses and those witnesses who are former employees and formerly retained counsel should decide not to appear at this trial.

And, if it is assumed, as must be done at this stage of the proceedings, that the case will proceed to adjudication on the patent infringement issues and the patent defenses, it is well to remember that Rambus presented the live testimony of former and current employees at the first trial of Rambus v. Infineon, thereby demonstrating that there was no particular inconvenience to the

witnesses, many of whom it appears would be asked by Rambus to testify in this case.   Also, it is appropriate to keep in mind that much of the infringement trial will be accomplished on the basis of expert testimony.   These experts will be retained and reasonably can be expected to be here to present live testimony on the issues of infringement.

On this record, the Court cannot conclude that the convenience of witnesses factor augers in favor of transfer or that Rambus has carried its burden to demonstrate the inconvenience of witnesses related to it, currently or formerly.

Finally, Rambus has identified ten witnesses in its supporting papers who live in the Northern District of California and who testified at the Federal Trade Commission proceeding, In the Matter of Rambus Inc., Docket No. 3902.  None of these witnesses, however, appeared in the first trial of Rambus v. Infineon or in the unclean hands and spoliation trial held in February and March of this year in Rambus v. Infineon.  It is, therefore, doubtful that any of the testimony of these witnesses would be necessary.

In the declaration attached to its brief and at oral argument, Rambus offered some, albeit minimal, guidance as to what issues the testimony of these ten witnesses might be relevant.   It is difficult to ascertain, from that explanation, how the testimony of

those witnesses would relate to the issues that are presented by Samsung's complaint or by Rambus' counterclaim.

Rambus says that many of these witnesses will testify respecting whether Rambus had a duty to disclose certain patents to JEDEC and whether Rambus improperly obtained information from JEDEC.  The nature of Rambus' duty with respect to disclosure under the JEDEC patent policy has been decided by the United States Court of Appeals for the Federal Circuit.  Accordingly, it is difficult to envision how testimony on that topic would be pertinent to any issue to be tried in this action.  The testimony about what Rambus obtained from JEDEC is best presented by Rambus witnesses.  And, based on the first trial in Rambus v. Infineon, the parties had no difficulty in securing both in person and videotaped testimony on the topic from other members of JEDEC respecting how they perceived what Rambus had done and the effect thereof.  On this record, the Court cannot conclude that Rambus has satisfied its duty to demonstrate the inconvenience of these ten witnesses.

It is likely true that a trial in the Northern District of California would be marginally more convenient for some witnesses, but that factor cannot be given significant weight in favor of Rambus here because Rambus has not established that the key witnesses will not appear if the parties so desire.  Most of those witnesses have good reason to appear on behalf of Rambus and to

support its cause.  And here, Samsung has offered to make all of its witnesses available in person.

**D.  Interest of Justice**

Under Section 1404(a), the Court must consider the "interest of justice" in determining whether to transfer venue.  The interest of justice encompasses public interest factors aimed at "systemic integrity and fairness."  <u>Stewart Org., Inc.</u>, 487 U.S. at 30.  <u>See also</u> <u>Brock v. Entre Computers Centers, Inc.</u>, 933 F.2d 1253, 1258 (4th Cir. 1991).  Judicial economy and the avoidance of inconsistent judgments are prominent among the principal elements of systemic integrity.[16]  <u>See</u> <u>U.S. Ship Management, Inc. v. Maersk Line, Ltd.</u>, 357 F.Supp.2d 924, 937-938 (E.D. Va. 2005).  Systemic integrity, however, must also necessarily take account of a party's attempt to game the federal courts through forum manipulation.  <u>See</u> <u>The Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.</u>, 249 F.Supp.2d 12, 15 (D. Mass. 2002).  The interest of justice is not

---

[16] When determining whether a fair proceeding requires a transfer of venue, courts often consider docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law. <u>Carpenter v. Parker Drilling Offshore USA, Inc.</u>, 2005 WL 1432373, *1 (E.D. La. 2005)(citing <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 505, 509 (1947)).  The only fairness element discussed by Rambus and Samsung is relative docket congestion.  Otherwise, Rambus has not argued that a fair proceeding requires transfer to the Northern District of California.

served by permitting a party to circumvent the force and effect of adverse rulings in prior litigation by seeking a transfer of venue.

## 1.  Related Actions

One of the most commonly cited aspects of the "interest of justice" factor is the goal of avoiding "multiplicity of litigation from a single transaction."  Wright, Miller, and Cooper § 3854 at 441.  As the Supreme Court has noted, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.  Moreover, such a situation is conducive to a race of diligence among litigants for a trial in the District Court each prefers."  Continental Grain Co. v. The FBL-585, 364 U.S. 19, 26 (1960).  The primary considerations in such cases are judicial economy, forum shopping, and the prospect of inconsistent outcomes.

When related actions are pending in the transferee forum, the interest of justice is generally thought to "weigh heavily" in favor of transfer.  U.S. Ship Management, 357 F.Supp.2d at 937.  In most cases, the "litigation of related claims in the same tribunal facilitates efficient, economical and expeditious pre-trial proceedings and discovery," and prevents "duplicative litigation and inconsistent results."  Id. at 938 (quoting Berg v. First American Bankshares, Inc., 576 F.Supp 1239, 1243 (S.D.N.Y. 1983).

29

Transfer and consolidation will serve the interest of judicial economy in most cases where the related actions raise similar or identical issues of fact and law.  Id.

There is another aspect of judicial economy, however, which must be considered.  "[W]here a party has previously litigated a case involving similar issues and facts[,] 'a court in that district will likely be familiar with the facts of the case.  As a matter of judicial economy, such familiarity is highly desirable.'" Id.  (quoting LG Electronics, Inc. v. Advance Creative Computer Corp., 131 F.Supp.2d 804, 815 (E.D. Va 2001)).  "[L]itigation in the same court avoids duplicative litigation where one court has already invested 'substantial time and energy' in a case."  Id.  "Duplicative litigation" takes on a different meaning in this context, but the impact on judicial economy is the same.  Judicial economy and the interest of justice favor a venue which has already committed judicial resources to the contested issues and is familiar with the facts of the case.

There is no doubt that the prospect of inconsistent judgments is a concern which should be taken into account in weighing the interest of justice.  All other factors being equal, the interests of justice dictate a transfer of venue in order to prevent "the possibility of inconsistent adjudications in separate courts." DPR Construction, Inc. v. IKEA Property, Inc., 2005 WL 1667778, *5

30

(E.D. Va. 2005).  Avoiding the potential for divergent judgments, however, should not come at the expense of judicial economy.  See GTE Sylvania, Inc. v. Consumer Products Safety Commission, 438 F.Supp. 208, 212 (D. Del. 1977) (denying motion to transfer venue where "a voluminous record relating to the merits of this case is already before the Court..."); Optical Recording Corp. v. Capital-EMI Music, Inc., 803 F.Supp 971, 974 (D. Del. 1992) (denying motion to transfer venue on ground that "[t]he Court's familiarity with the subject matter of the litigation [would] reduce the expenditure of judicial resources in the handling of this matter."); FMC Corp. v. AMVAC Chemical Corp., 2005 WL 1804295, *10, *16 (E.D. Pa. 2005) (denying motion to transfer because retaining jurisdiction would serve judicial economy in light of court's recent experience with substantially similar fact intensive litigation); Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc., 2003 WL 22387598, *5 (N.D. Cal. 2003) ("[E]vidence of plaintiff's attempt to avoid a particular precedent from a particular judge weighs heavily" in considering a motion to transfer venue.).

There is no disputing Rambus' claim that actions involving, inter alia, the patents-in-suit here are currently pending in the putative transferee forum, the Northern District of California. Under different circumstances, judicial economy and the interest of justice would  weigh in favor of transferring venue to the Northern

31

District of California.  The reality, however, is that the Court here is hardly faced with a *tabula rasa*.

To begin, this Court already has conducted a patent infringement trial involving the four patents-in-suit.  And, it has readied those issues for a second trial on remand.  In so doing, the Court has expended enormous judicial resources and has become quite familiar with the issues presented by Samsung's First Amended Complaint and by Rambus' counterclaims.  In fact, many of the issues preliminary to trial have been the subject of decisions issued in Rambus v. Infineon.

Furthermore, Samsung has requested a declaratory judgment that Rambus' patents are unenforceable on the grounds of unclean hands and spoliation of evidence.  This Court already has conducted a trial on the merits of those issues and actually has ruled on those issues in Rambus v. Infineon.  Again, significant judicial resources also were devoted to that trial and the run-up to it.

Of course, the Northern District of California has invested significant judicial resources in Rambus litigation too, but it has yet to conduct a trial on the unclean hands and spoliation of evidence issues or on any of the other patent-related issues presented in this action.  On the unique record in this case, judicial economy weighs in favor of the venue which already has committed its time and energy to so many of the issues.  It would

be quite convenient for this Court to ignore all that has occurred in Rambus v. Infineon and then to transfer this case to the Northern District of California.  But, to do so, would be to ignore the interest of justice.  This is one of the rare cases in which transfer and consolidation would cut against judicial economy.

Indeed, to transfer this case would foist onto another court a responsibility that, on this record and under the unique circumstances presented by this case, regrettably rests here.  The result of transfer would be to frustrate, rather than further, the interests of justice by requiring another court to do what already has been done here.

Finally, to transfer this case would be to permit Rambus to succeed in a most blatant display of forum manipulation.  The record here shows that Rambus and Samsung have been doing business for almost fifteen years and that they have been negotiating a license renewal for over a year.  The record shows that the settlement of Rambus v. Infineon in March 2005 operated to bring that negotiation into sharp focus. The record also shows that, after the Rambus/Infineon settlement, Samsung and Rambus (who had been dealing amicably for 13 years) were discussing a Standstill Agreement to allow the cases in the Northern District of California to be resolved before further negotiations between Samsung and Rambus would continue.

On June 6, 2005, Rambus altered its position drastically in an effort to dictate where litigation between it and Samsung would occur.  And, when Samsung refused to agree to the ultimatum given it, Rambus immediately filed suit in the Northern District of California.  The record shows that Rambus acted as it did for one purpose: to avoid litigating in this district, a forum that for two and a half years was among its preferred venues for conduct of patent litigation with DRAM manufacturers, including Samsung.

The interests of justice are not served by approving the conduct in which Rambus engaged with Samsung.  A transfer, however, would do precisely that and thus would run counter to the interests of justice.

The potential for inconsistent results is a consideration presented by these facts, but it does not outweigh the demands of judicial efficiency.  Additionally, it is disingenuous for Rambus to rely on that argument, because it is clear that Rambus hopes to produce a result inconsistent with that rendered by this Court in the Rambus/Infineon litigation by seeking to enforce in the Northern District of California patents which this Court has held are not enforceable.  The potential for divergent findings on the unclean hands and spoliation of evidence issues, and thus the enforceability of Rambus' patents, exists whether or not this Court transfers this case to the Northern District of California.  In

34

this context, concerns regarding inconsistent judgments cannot be given great weight.

## 2.   Docket Conditions

The relative docket conditions are considered in weighing the interest of justice, but are not given great force.  GTE Wireless, Inc. v. Qualcomm, Inc., 71 F.Supp.2d 517, 520 (E.D. Va. 1999).  If other factors weigh in favor of transferring venue, the fact that plaintiff might obtain a trial and judgment in a shorter period would not be sufficient to avoid transfer.  Id.  Where the so-called "rocket docket" is the primary motivation for laying venue, "[t]he interests of justice are not served by such blatant forum shopping."  Telepharmacy Solutions, 238 F.Supp.2d at 744.  While "docket considerations do factor into determining whether retaining jurisdiction is in the interests of justice, such considerations cannot be the sole impetus behind retention of the case."  Id.

In this case, the relative general docket conditions of the Eastern District of Virginia and the Northern District of California are not a dispositve factor at all because no record has been developed to support application of this factor in the unique context here presented.

3.   **First-to-File Rule**

"While the decision to transfer a case under § 1404 lies solely within the discretion of the trial court, there is a presumption in favor of the plaintiff's choice of forum and the defendant must bear the burden of proving that a transfer is warranted." Holmes Group, 249 F.Supp.2d at 15.  Where "identical actions are pending concurrently in two federal courts, the first-filed action is generally preferred." Id.  The policy underlying the first-to-file rule is the avoidance of duplicative litigation and the conservation of judicial resources.  Not surprisingly then, exceptions to the rule are common "when justice or expediency requires." Genentech, Inc. v. Eli Lilly and Co., 998 F.2d 931, 937 (Fed. Cir. 1993).

Other scenarios giving rise to exceptions to the first-to-file rule include bad faith, anticipatory suits, and forum shopping. Plating Resources, Inc. v. UTI Corp., 47 F.Supp.2d 899, 905 (N.D. Ohio 1999).  "To be sure, the rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments.  Yet, fundamental fairness dictates the need for fashioning a flexible response to the issue of concurrent jurisdiction." E.E.O.C. v. Univ. of Pennsylvania, 850 F.2d 969, 977 (3rd Cir. 1988)(internal citations and quotation marks omitted).  The "court must act with regard to what is right

36

and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result."  Id. (internal quotation marks omitted).

When the circumstances suggest a race to the courthouse, the first-to-file rule loses much of its force.  "An anticipatory filing is improper when 'it attempts to exploit the first-filed rule by securing a venue that differs from the one that the filer's adversary would be expected to choose.'"  Herbert Ltd. Partnership v. Electronic Arts, Inc., 325 F.Supp.2d 282, 292 (S.D.N.Y. 2004). See also The Holmes Group, 249 F.Supp.2d at 16.  In a typical patent infringement case, for example, the first-to-file rule would be disfavored in a scenario where "(1) a patentee has notified an alleged infringer of suspected infringement, (2) good faith negotiations between the parties have ensued and (3) the alleged infringer then files a declaratory judgment action in the forum of his choice."  Id.

In determining whether to favor the district in which the litigation was first filed, the Court should also consider the effect of prior litigation.  When currently pending actions raise previously litigated issues, the district in which that litigation took place "is in a better position to interpret its prior opinion and deal with parties who have already appeared before that court." Household Int'l, Inc. v. Westchester Fire Insurance Co., 2002 WL

31307426, *2 (N.D. Ill. 2002)(granting transfer of venue to district where defendant brought suit subsequent to plaintiff's initial filing). The Court should not ignore the fact that a party has received an unfavorable ruling in one forum, and as a result, attempted to lay venue in a second forum. See id. at *3. In this setting, the interest of justice weighs against a mechanical application of the first-to-file rule.

In this case, Samsung's suit for declaratory judgment mirrors a portion of its counterclaim in the litigation in the Northern District of California, where Rambus filed one day before Samsung's filing in the Eastern District of Virginia. Likewise, Rambus' counterclaims for patent infringement in this district mirror its claims against Samsung in the Northern District of California. All else being equal, the first-to-file rule would militate in favor of Rambus' choice of forum. However, all else is not equal. Instead, equitable concerns and the goal of judicial economy call for an exception to the first-to-file rule in this case.

As discussed previously, the conservation of judicial resources favors denying Rambus' motion to transfer. The time and energy expended by this Court in the Infineon litigation are sufficient grounds for an exception to the first-to-file rule.

It is also apparent that Rambus desperately wanted to avoid litigation in this forum after the Court's ruling in Rambus v.

38

Infineon.  On this record, Rambus' conduct is fairly characterized as anticipatory forum selection and forum manipulation.  And, the conduct in which Rambus has engaged with its long-time commercial cohort, Samsung, can hardly be described as good faith.  Rambus led Samsung to believe that a Standstill Agreement would present the resolution to a commercial dispute.  Instead, Rambus decided to litigate and gave Samsung an ultimatum--a forced forum selection provision or termination of the license, renewal of which had been under discussion for over a year.  It would be improper to ignore Rambus' race to the courthouse and the adverse implications thereof for the interest of justice.

On balance, the interest of justice calls for denial of the motion to transfer.

### CONCLUSION

For the foregoing reasons and because Rambus has not carried its burden to prove that transfer under Section 1404(a) is warranted, the Motion by Defendant Rambus Inc. to Transfer Action is denied.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

                                        /s/
                              _____
                              Robert E. Payne
                              United States District Judge

Richmond, Virginia
Date:   09/14/05