**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

SAMSUNG ELECTRONICS CO.,
LTD.,

    Plaintiff,

v.                       Civil Action No. 3:05cv406

RAMBUS, INC.,

    Defendant.

**MEMORANDUM OPINION**

Rambus, Inc. ("Rambus") moves to dismiss the declaratory judgment action filed against it by Samsung Electronics Co., Ltd. ("Samsung") on June 7, 2005. Rambus contends that this action has been rendered moot by the covenants not to sue Samsung, which Rambus filed after the action was filed, and by the consequent dismissal of Rambus' counterclaims. According to Rambus, the Court no longer has subject matter jurisdiction, and thus Samsung's declaratory judgment action should be dismissed under Fed. R. Civ. P. 12(b)(1). Rambus further argues that the Court does not have subject matter jurisdiction over Samsung's request for attorney's fees. For the reasons that follow, the motion is granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

Samsung filed this action seeking a declaratory judgment, _inter_ _alia_, that four patents held by Rambus are unenforceable by virtue of the doctrines of unclean hands, equitable estoppel,

patent misuse, waiver, laches, and laches in the United States Patent and Trademark Office ("PTO").  The patents-in-suit are the four patents-in-suit in Rambus, Inc. v. Infineon Technologies AG, No. CIV. A. 3:00cv524 (E.D. Va.) ("Rambus v. Infineon"): (1) U.S. Pat. No. 5,953,263 ("the '263 Patent"); (2) U.S. Pat. No. 5,954,804 ("the '804 Patent"); (3) U.S. Pat. No. 6,032,214 ("the '214 Patent"); and (4) U.S. Pat. No. 6,034,918 ("the '918 Patent").  Rambus asserted counterclaims against Samsung in its Answer, alleging infringement of the same patents.

## A.    Rambus/Infineon Litigation

Rambus develops and licenses technology to companies that manufacture semi-conductor memory devices.   Its patents are directed to various dynamic random access memory devices ("DRAMs"), Rambus DRAMs ("RDRAMs"), Synchronous Dynamic Random Access Memory ("SDRAM"), and Double Data Rate Synchronous Dynamic Random Access Memory ("DDR-SDRAM").  See Rambus, Inc. v. Infineon Tech. AG, 222 F.R.D. 280, 282 (E.D. Va. 2004).  Beginning in early 1998 and continuing through 1999 and 2000, Rambus developed, refined, and implemented a patent licensing and litigation strategy, which was aimed at several specifically identified DRAM manufacturers.  Among the targeted DRAM manufacturers were Infineon, Samsung, and Hynix Semiconductor, Inc. ("Hynix").

Pursuant to that strategy, in June 2000, in this Court, Rambus asserted patent infringement claims against Infineon with respect

to the same four patents-in-suit that are at issue in Samsung's action for declaratory judgment. After extensive discovery and issuance of a claim construction opinion, there was a two week trial on Rambus' infringement claims, as well as Infineon's counterclaims. Ultimately, the judgment was appealed to the United States Court of Appeals for the Federal Circuit, which affirmed in part, reversed in part, and remanded for further proceedings. Additional discovery was conducted at that time and, during those proceedings, it was determined that spoliation of documents by Rambus warranted the piercing of Rambus' attorney-client and work-product privileges. Rambus, Inc. v. Infineon Tech. AG, 222 F.R.D. at 296-99. Subsequent discovery was permitted on the issue of spoliation and other issues.

In February 2005, a bench trial was held on Infineon's defense of unclean hands. Simultaneously, a corollary evidentiary proceeding was held with respect to spoliation of evidence, for which a sanction of dismissal was requested. At the conclusion of the trial of those issues, the Court ruled from the bench that Infineon had proven, by clear and convincing evidence, that Rambus was liable for unclean hands, thus barring Rambus from enforcing the four patents-in-suit. Additionally, the Court ruled that Infineon had proven, by clear and convincing evidence, that Rambus had spoliated evidence, for which dismissal was the appropriate sanction. Following this ruling, and before the Court issued

3

findings of fact and conclusions of law, Rambus and Infineon settled.

**B.    Background And Procedural History Of This Action**

Also pursuant to its licensing and litigation strategy, and while Rambus was prosecuting its actions against Infineon, Rambus entered license negotiations with Samsung.  In October 2000, the parties entered into a license agreement that covered, <u>inter</u> <u>alia</u>, the patents-in-suit.  <u>Samsung Electronics Co., Ltd. v. Rambus Inc.</u>, 386 F.Supp.2d 708, 712 (E.D. Va. 2005).  Samsung and Rambus amended that license agreement in 2001 because of developments in the litigation between Rambus and Infineon.  <u>Id.</u>

Samsung and Rambus began to renegotiate the terms of the license agreement in July 2004.  A part of those negotiations was a so-called "Standstill Agreement" by which any litigation over the license agreement would be delayed for a year while negotiation continued.  However, the negotiations did not go to the liking of Rambus.  When Samsung refused to accede to Rambus' demand for a contract provision that would allow Rambus to litigate any patent dispute in California, Rambus terminated the discussions respecting an extension of the license agreement and the license agreement itself.  Simultaneously, Rambus filed a patent infringement action against Samsung in the United States District Court for the Northern District of California.  <u>Samsung</u>, 386 F.Supp.2d at 713-15. In that action, Rambus claimed that Samsung was infringing, <u>inter</u>

4

_alia_, all four of the patents-in-suit that were at issue in the Rambus/Infineon action.

On June 7, 2005, one day after Rambus brought patent infringement claims against Samsung in the Northern District of California, Samsung filed this action for declaratory judgment, and, shortly thereafter, filed its First Amended Complaint.  <u>See Samsung</u>, 386 F.Supp.2d at 712.  Samsung's complaint and the amended complaint proceeded on the clearly articulated theory that the decision on the spoliation and unclean hands issues in the Rambus/Infineon litigation barred any claim for infringement of the patents-in-suit.  Nonetheless, on July 12, 2005, Rambus counterclaimed for infringement of all four patents-in-suit, and then moved to transfer the action to the Northern District of California so that Rambus could press its infringement claims there.  Contemporaneous with its response to Rambus' motion to transfer, Samsung moved for partial summary judgment on the issues of spoliation and unclean hands.  Samsung argued that the Court's bench ruling in <u>Rambus v. Infineon</u> with respect to Rambus' spoliation and unclean hands should be given collateral estoppel effect and consequently that the four patents-in-suit were unenforceable.  A briefing schedule was set for Samsung's motion for partial summary judgment.

### C.   Covenants Not to Sue

Thereafter, on September 6, 2005, Rambus filed an "unconditional" and "irrevocable" covenant not to assert patent infringement claims against Samsung with respect to the '804 and '214 patents ("First Covenant"). The First Covenant expressly extends to actions in the International Trade Commission as well. The scope of the covenant not to sue extends to "any and all methods, processes, and products made, used, offered for sale, sold, or imported by Samsung currently or at any time prior to the date of this covenant." However, the First Covenant does not extend to any other patents held by Rambus, related or unrelated, and Rambus expressly declined to concede the merits of Samsung's allegation that the '804 and '214 patents were unenforceable and invalid.

Subsequently, on September 13, 2005, Rambus and Samsung stipulated that the First Covenant "eliminates any need for declaratory relief that Samsung may have had with respect to the '804 Patent and the '214 Patent." Stipulation (Docket No. 42). Samsung, however, reserved its right to request that the Court declare the case exceptional and order Rambus to pay Samsung's attorney's fees under 35 U.S.C. § 285. Rambus expressly reserved the right to oppose such relief, and to argue that the First Covenant moots such relief. The stipulation also provided that

6

Samsung's declaratory judgment action with respect to the '804 and '214 patents was to be dismissed without prejudice.

On September 12, 2005, Rambus filed its opposition to Samsung's motion for partial summary judgment on the defense of unclean hands based on spoliation. On September 14, 2005, Rambus' motion to transfer this action to the Northern District of California was denied. On the same date, counsel were ordered to confer about procedures to expedite the trial of this action and to report the results thereof to the Court on September 21, 2005. On September 21, 2005, the Court gave notice of its intent to take judicial notice of the record of the spoliation and unclean hands bench trial in the Rambus/Infineon litigation.

On September 21, 2005, Mr. John Danforth, Rambus' General Counsel, signed a second covenant not to sue Samsung ("Second Covenant"), this time with respect to the '263 and '918 patents. The Second Covenant was filed with the Court on September 22, 2005. The language in the Second Covenant with respect to the covenant not to sue is identical to the language in the First Covenant.

Rambus also used the Second Covenant as a vehicle to withdraw its counterclaims in this action as well as its claims against Samsung in the Northern District of California, Rambus Inc. v. Samsung Electronics Co., Ltd., et al., Case No. C-05-02298-RMW (N.D. Cal.), which asserted infringement of the '263 and '918

7

patents.  Rambus' counterclaims in this action were dismissed with prejudice by the Court on September 28, 2005.[1]

Contemporaneous with the filing of the Second Covenant, Rambus filed its motion to dismiss Samsung's declaratory judgment action for lack of subject matter jurisdiction under Rule 12(b)(1). Rambus contends that the First and Second Covenants ("Rambus Covenants") moot any case or controversy, thereby depriving the Court of subject matter jurisdiction, including jurisdiction to rule on Samsung's request for attorney's fees.  Notwithstanding its argument on the latter point, on October 3, 2005, Rambus made a written offer to Samsung to pay reasonable attorney's fees incurred by Samsung in this action.  In Rambus' view, that offer along with the Rambus Covenants "affords Samsung all of the relief to which it may otherwise be entitled in this action and therefore moots any further proceedings on the merits of any of Samsung's claims, including its allegations that this action qualifies as an exceptional case entitling Samsung to recover its reasonable attorney's fees."  However, in making its settlement offer, Rambus expressly declined to concede the merits of Samsung's allegations.

Samsung argues that the Court retains jurisdiction not only to decide whether this is an exceptional case, thereby entitling Samsung to payment of attorney's fees under 35 U.S.C. § 285, but

---

[1] The record does not reflect whether Rambus' claims in the California action have been dismissed yet.

also to issue declaratory relief by ruling on Samsung's motion for partial summary judgment or, if not, then by subsequent proceedings on the merits.  Samsung contends that, to determine whether this is an exceptional case, the Court must decide the motion for partial summary judgment on the issue of unclean hands which, in turn, is based on spoliation.  Additionally, Samsung contends that the voluntary cessation and collateral consequences exceptions to the mootness doctrine preserve the Court's jurisdiction over the action for declaratory judgment.  Where Samsung once argued that the declaratory relief it sought was targeted to the four patents-in-suit from Rambus v. Infineon, now it suggests that the action for declaratory judgment is rescued from the brink of mootness by the benefit that a judgment and its potential collateral estoppel effect might have for Samsung and other DRAM manufacturers in defending against Rambus' assertion of  "tainted" patents.

## DISCUSSION

Whether the Rambus Covenants deprive the Court of subject matter jurisdiction to decide Samsung's motion for partial summary judgment or otherwise to afford declaratory relief is a different proposition than whether there is jurisdiction to determine the issues presented under 35 U.S.C. § 285.  Hence, those issues will be considered in turn.

I.    **Subject Matter Jurisdiction Over Declaratory Judgment Action**

When a party files an action for declaratory judgment under 28 U.S.C. § 2201(a), as Samsung has, the district court has subject matter jurisdiction so long as an actual controversy exists.  Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 855 (Fed. Cir. 1999).  The declaratory judgment statute explicitly incorporates the Article III case or controversy limitation.  15 Moore's Federal Practice, § 101.07 (Matthew Bender 3ed. 2005).  "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests."  Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-241 (1931).  "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  Id. at 241.  Accordingly, "a federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.'"  Preiser v. Newkirk, 422 U.S. 395, 402 (1975)(quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)).

An actual controversy becomes moot when there is a "material change in circumstances" that entirely terminates the controversy between the parties.  See Cardinal Chemical Co. v. Morton Int'l, Inc., 508 U.S. 83, 98 (1993).  "If intervening factual or legal events effectively dispel the case or controversy during pendency

of the suit, the federal courts are powerless to decide the questions presented." Ross v. Reed, 719 F.2d 689, 693-694 (4th Cir. 1983). "The mootness doctrine requires that the plaintiff's controversy remain live throughout the litigation; once the controversy ceases to exist, the court must dismiss the cause for want of jurisdiction." Tucker v. Phyfer, 819 F.2d 1030, 1033 (11th Cir. 1987). See also City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000); Lewis v. Continental Bank Corp., 494 U.S. 472, 477-478 (1990).

### A.   Effect Of The Rambus Covenants

In the context of a plaintiff seeking declaratory relief from patent infringement claims, the Federal Circuit has defined an actual controversy to require: "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." Amana, 172 F.3d at 855 (quoting BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993)). Furthermore, "[a]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Id. Even where an actual controversy existed at the time the declaratory judgment action was filed, if the situation changes so that there is no longer a reasonable apprehension that the

declaratory plaintiff will have to defend against a patent infringement suit, then no actual controversy exists.

Consequently, "a patentee defending against an action for a declaratory judgment of invalidity can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer with respect to any of its past, present, or future acts..." Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1058 (Fed. Cir. 1995).  When a patent holder covenants not to sue an alleged infringer in this manner, the patent holder is "forever estopped" from asserting the liability of the alleged infringer.  Id. at 1059.  Even where a covenant not to assert infringement of certain patents does not include future products, "an actual controversy cannot be based on a fear of litigation over future products." Amana, 172 F.3d at 855.  In such cases, the Federal Circuit has held that "[t]he residual possibility of a future infringement suit based on [the alleged infringer's] future acts is simply too speculative a basis for jurisdiction over [the alleged infringer's] counterclaim for declaratory judgments of invalidity." Super Sack, 57 F.3d at 1060. See also Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc., 248 F.3d 1333 (Fed. Cir. 2001).

Given the language in the First and Second Covenants, the stipulation which followed the First Covenant, the dismissal with prejudice of Rambus' counterclaims, and the decision in Super Sack,

Samsung cannot credibly argue that there remains any need for declaratory relief that Samsung may have had with respect to the four patents-in-suit.  Law and logic jointly compel the conclusion that Samsung's claims for declarations of unenforceability and invalidity for all four patents-in-suit should be dismissed, without prejudice, as moot.

### B.    Exceptions To The Mootness Doctrine

Samsung urges that its request for attorney's fees as well as the collateral consequences and voluntary cessation exceptions to the mootness doctrine preserve the Court's subject matter over Samsung's claims for declaratory relief.

### 1.    Collateral Legal Consequences

Even where an intervening event "may moot a claim in terms of the court's inability to undo or grant effective relief as to past acts or conditions, if those past acts have present, future, or collateral consequences then judicial review may nevertheless remain available."  15 Moore's Federal Practice, § 101.99[3].  "The collateral consequences doctrine applies most often in criminal cases, where, for example, some of the consequences of a felony conviction (loss of voting privileges, probation, etc.) remain, despite the fact that the defendant has been released from jail."  Horizon Bank & Trust Co. v. Massachusetts, 391 F.3d 48, 54 (1st Cir. 2004)(citing Sibron v. New York, 392 U.S. 40, 55 (1968)).  Such consequences are "subsidiary to the primary harm of criminal

convictions, prison time," and thus preserve jurisdiction over criminal appeals and petitions for writ of habeas corpus. Id.  See also Spencer v. Kemna, 523 U.S. 1 (1998).  "[A] criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." Sibron, 392 U.S. at 57.

Outside of criminal appeals and habeas petitions, application of the collateral consequences exception to mootness is relatively rare.  Indeed, the scope of the exception outside the criminal context is difficult to discern.  Using the criminal cases as a model, however, it is apparent that the collateral consequences exception to mootness applies when a court's inability to provide relief on the merits of a claim may have adverse legal implications for a party simply by maintaining the status quo.  The relevant status quo is that which has been imposed by a judicial or administrative determination, which is then under review.  See Felster Publ'g v. Burrell (In re Burrell), 415 F.3d 994, 999 (9th Cir. 2005); Public Utilities Comm'n of the State of Cal. v. F.E.R.C., 100 F.3d 1451, 1460 (9th Cir. 1996); Apotex, Inc. v. Thompson, 347 F.3d 1335, 1345 (Fed. Cir. 2003); Dailey v. Vought Aircraft Co., 141 F.3d 224, 227 (5th Cir. 1998); Phillips v. McLaughlin, 854 F.2d 673, 677 (4th Cir. 1988).  A status quo imposed by the parties themselves and the collateral legal

consequences therefrom do not invoke this narrow exception to mootness.

There is a line of decisions following from <u>Super Tire Engineering Co. v. McCorkle</u>, 416 U.S. 115, 122 (1974), upon which Samsung relies, in which plaintiffs have challenged specific actions of governmental agencies, as well as the policies underlying the agencies' actions. <u>See</u>, <u>e.g.</u>, <u>City of Houston v. Dept. of Housing and Urban Development</u>, 24 F.3d 1421, 1428 (D.C. Cir. 1994). Without explicitly referencing the collateral consequences exception, the D.C. Circuit held that, in such cases, "the challenge to the policy is not necessarily mooted merely because the challenge to the particular agency action is moot." <u>Id.</u> "[I]f a plaintiff's specific claim has been mooted, it may nevertheless seek declaratory relief forbidding an agency from imposing a disputed policy in the future, so long as the plaintiff has standing to bring such a forward-looking challenge and the request for declaratory relief is ripe." <u>City of Houston</u>, 24 F.3d at 1429.

Whether <u>Super Tire</u> and its progeny are properly categorized as collateral consequences cases, it is plainly apparent that this line of decisions does not bolster Samsung's argument for application of that exception to the mootness doctrine here. Rambus is not a governmental agency, and Samsung cannot challenge

Rambus' general litigation strategy as if it were analogous to the official policy of an administrative body.

Whatever the scope of the collateral consequences exception outside the criminal context, there is no authority for applying it here.  Indeed, to apply the collateral consequences action here would convert a narrow exception to the mootness doctrine into a full scale breach of the Article III case or controversy requirement.

### 2.   Voluntary Cessation

"It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'"  Friends of the Earth, Inc. v. Laidlaw Environmental Services, 528 U.S. 167, 189 (2000)(quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)).  See also United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953)(holding that, in general, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot.").  However, a case may become moot where "subsequent events [make] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  Friends of the Earth, 528 U.S. at 189 (quoting United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203 (1968)).  Defendants bear a "formidable burden" in making such a showing.  Id. at 190.

Additionally, "interim relief or events [must] have completely and irrevocably eradicated the effects of the alleged violation." <u>Los Angeles County v. Davis</u>, 440 U.S. 625, 631 (1979).

Samsung has filed an action for a declaratory judgment of the unenforceability and invalidity of the four patents-in-suit. The challenged practice at the heart of Samsung's request for declaratory relief is Rambus' assertion of its four patents-in-suit against Samsung. In tendering the Rambus Covenants, Rambus agreed to cease the challenged conduct, and Samsung and Rambus agreed that Rambus' counterclaims would be dismissed with prejudice. In <u>Super Sack</u>, the Federal Circuit held that, when a patent holder executes a covenant not to sue of the type executed by Rambus in this case, the patent holder is "forever estopped" from asserting the liability of the alleged infringer. <u>Super Sack</u>, 57 F.3d at 1059. In the mode prescribed by <u>Super Sack</u>, the Rambus Covenants, together with the dismissal with prejudice of the infringement counterclaims, make it clear that Rambus' assertions of the four patents-in-suit against Samsung, including allegations of infringement, cannot reasonably be expected to recur as to products formerly or currently made by Samsung.

In <u>Cardinal Chemical</u>, the Supreme Court rejected the Federal Circuit's previous view that, when a district court's finding of noninfringement was affirmed on appeal, the appeal of a declaratory judgment of patent invalidity was rendered moot. <u>Cardinal</u>

Chemical, 508 U.S. at 98-99.  The Supreme Court noted that "[a] company once charged with infringement must remain concerned about the risk of similar charges if it develops and markets similar products in the future." Id. at 99-100.  At first blush, it might be tempting to conclude that the Supreme Court was recognizing the separate viability of claims of patent invalidity.  If this were the case, a covenant not to sue would not account for a claim of patent invalidity, and consequently the voluntary cessation exception to mootness might well apply.  Indeed, it would be far from absolutely clear that the patent holder would not assert the patent against future products produced by the alleged infringer.

In Super Sack, however, the Federal Circuit held that the holding in Cardinal Chemical was limited and that "a claim for a declaratory judgment of invalidity is independent of the patentee's charge of infringement in the following--and only the following-- way: an affirmed finding of noninfringement does not, without more, justify a reviewing court's refusal to reach the trial court's conclusion on invalidity." Super Sack, 57 F.3d at 1060.  Cardinal Chemical did "not revolutionize the justiciability of declaratory judgment actions attacking a patent's validity," and  "a party seeking a declaratory judgment still has the burden of establishing the existence of an actual case or controversy." Id. (omitting internal quotations marks). Cf. Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1348 (Fed. Cir. 2005)(distinguishing "unique

18

procedural posture," where jury verdict preceded covenant not to sue, from Super Sack, where covenant not to sue was filed prior to consideration or resolution of infringement claim).

Considering the effect of the Rambus Covenants, and the decisions of the Federal Circuit, jurisdiction cannot be predicated on the argument that Rambus will continue to assert "tainted" patents against Samsung and other DRAM manufacturers, and that this possibility prevents the action for declaratory judgment from being mooted. However, given Rambus' rather healthy appetite for litigation, it cannot realistically be said that Rambus' conduct -- suing on the patents-in-suit -- cannot reasonably be expected to recur as to future products made by Samsung. But, as indicated previously, the Federal Circuit has held the prospect of a future suit as to future conduct to be an insufficient ground to avoid the mootness that results from a covenant not to sue. Super Sack, 57 F.3d at 1060. To use that prospect as the definition of "recurrence" in applying the voluntary cessation exception to the mootness doctrine would run counter to the Federal Circuit's decision in Super Sack.

Rambus' motion to transfer venue was denied, in part, because the interests of justice were served by taking advantage of this Court's unique experience with related litigation on the very same patents and issues relative to their enforceability. That ruling was not a charter to decide the merits of Samsung's claims absent

19

any connection to an extant case or controversy about the enforceability or validity of the four patents-in-suit. It is true that, as Samsung argues, through capitulation and consequent court-ordered dismissal of its counterclaims, Rambus has succeeded in avoiding, in this action, the risk of a declaratory judgment that the patents-in-suit are neither enforceable nor valid against Samsung. Nonetheless, the Court cannot make a ruling on the merits of those issues where it has been divested of subject matter jurisdiction.

### 3. The Claim For Attorney's Fees Does Not Necessitate A Declaratory Judgment On The Issues of Enforceability Or Validity

Samsung contends that, even in the face of the clear implications of Super Sack, its claim for attorney's fees under 35 U.S.C. § 285 operates to support the exercise of subject matter jurisdiction over the claims for declaratory relief. That argument reaches too far.

An "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." Lewis, 494 U.S. at 480(omitting internal citation). But, here, there clearly was jurisdiction to decide the underlying claim, and 35 U.S.C. § certainly was not the predicate for that jurisdiction. However, "[w]here on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure

that mooted litigation is not pressed forward, and unnecessary judicial pronouncements on even constitutional issues obtained, solely in order to obtain reimbursement of sunk costs." Id. See also Tunik v. Merit Systems Protection Bd., 407 F.3d 1326, 1331 (Fed. Cir. 2005)(same). In S-1 v. Spangler, 832 F.2d 294, 298 (4th Cir. 1981), our Court of Appeals made clear that a pending claim for attorney's fees did not avert the consequence of mootness of a compromised underlying claim, notwithstanding that the court retained jurisdiction to decide "whether and in what amounts attorneys fees should be recoverable...." (citing United States v. Munsingwear, 340 U.S. 36 (1950)). See also, United States v. Ford, 650 F.2d 1141, 1143 (9th Cir. 1981) (to the same effect).

Other district courts have been confronted with contentions that Section 285 provides a basis for issuing a declaratory judgment on the otherwise mooted issue of unenforceability of a patent as part of deciding a claim for attorney's fees under 35 U.S.C. § 285. For example, in Sony Electronics, Inc. v. Soundview Technologies, Inc., 359 F.Supp.2d 173 (D. Conn. 2005), the patent holder moved to dismiss a declaratory judgment counterclaim as moot following affirmance of a judgment of non-infringement and the subsequent expiration of the patent-in-suit. One of the alleged infringers argued that it should be permitted to pursue its counterclaim for a declaratory judgment of unenforceability. Following a discussion of Cardinal Chemical, the court noted that

21

section 285 "is not an independent basis for jurisdiction" to decide an otherwise moot claim.  Id. at 176.  The court held that the alleged infringer was "entitled to seek attorneys fees on the underlying litigation on which [it had] prevailed, but [could not] create more litigation that is otherwise moot merely to create an alternative basis for attorneys fees."  Id.  See also Technimark, Inc. v. Crellin, Inc., 14 F.Supp.2d 762 (M.D.N.C. 1998) (granting motion to dismiss as moot counterclaim for declaratory judgment of patent invalidity, and rejecting alleged infringer's argument that court retained jurisdiction to decide the substance of the counterclaim of patent invalidity merely because it retained jurisdiction to determine entitlement to attorney's fees and the quantum thereof).

In sum, it is settled that a claim for attorney's fees does not avert mootness of the underlying claim even though there is jurisdiction to determine whether a party is entitled to attorney's fees and, if so, how much.

## II.   Subject Matter Jurisdiction Over Request For Attorney's Fees

Rambus argues that those decisions on mootness also operate as a bar to the exercise of jurisdiction to decide whether Samsung is entitled to attorney's fees and, if so, the amount.  It should be obvious from those decisions, and an examination of the purpose and nature of 35 U.S.C. § 285, that this argument is devoid of merit.

22

The statute provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  The question posed by this aspect of Rambus' motion to dismiss is not whether this is an "exceptional case" or whether Samsung is a "prevailing party" under the terms of the statute, but rather whether the Court retains subject matter jurisdiction to decide those matters.

### A.   The Intervening Mootness Of The Declaratory Judgment Claims

As a result of the Rambus Covenants, the Court no longer has jurisdiction over Samsung's request for declaratory relief, and Rambus' counterclaims have been dismissed with prejudice.  From that point of departure, Rambus argues that the Court does not have jurisdiction to decide Samsung's section 285 claim because the Court does not have subject matter jurisdiction over the underlying substantive claims.  Rambus' argument fails to recognize the critical distinction between cases where the court never had subject matter jurisdiction over the underlying claims, and cases in which the court has been divested of its subject matter jurisdiction over the underlying claims by intervening mootness.  That distinction is dispositive.

Rambus relies heavily on the decision in W.G. v. Senatore, 18 F.3d 60, 64 (2nd Cir. 1994), wherein the Second Circuit held "[f]ee shifting provisions cannot themselves confer subject matter jurisdiction."  Instead, "such provisions must be read in

conjunction with substantive statutes to establish proper jurisdiction over fee applications." Id.  "Where there is no subject matter jurisdiction to proceed with the substantive claim, as a matter of law 'that lack of jurisdiction bars an award of attorneys fees'" under section 285.  Id. (quoting Keene Corp. v. Cass, 908 F.2d 293, 298 (8th Cir. 1990).  See also Hudson v. Principi, 260 F.3d 1357, 1363 (Fed. Cir. 2001).

Although Senatore is an accurate statement of the law insofar as it goes, it does not account for cases of intervening mootness. In particular, Senatore stands for nothing more than the settled precept that lack of subject matter jurisdiction over a substantive claim serves "to bar an award [of attorney's fees] where an action was moot at the time of filing."  New York State Chapter of the American College of Emergency Physicians, Inc. v. Wing, 987 F.Supp. 127, 130 (N.D.N.Y. 1997).  See also Randolph Union High School Dist. No. 2 v. Byard, 897 F.Supp. 174, 176 (D. Vt. 1995); Robinson Rubber Products Co., Inc. v. Hennepin County, Minn., 2004 WL 771257 (S.D. Ind. 2004).  That, of course, was not this case, for the action was not moot when it was filed.  Moreover, it also is settled that, "[i]n cases involving intervening mootness [], a district court may still award attorney's fees under" section 285. Wing, 987 F.Supp. at 130.  See also Dahlem by Dahlem v. Bd. of Educ. Of Denver Public Schools, 901 F.2d 1508, 1511 (10th Cir. 1990)("While a claim of entitlement to attorney's fees does not

preserve a moot cause of action, the expiration of the underlying cause of action does not moot a controversy over attorney's fees already incurred.")(internal citations omitted).   "Thus a determination of mootness neither precludes nor is precluded by an award of attorney's fees." Doe v. Marshall, 622 F.2d 118, 119 (5th Cir. 1980).

Where a court is divested of its subject matter jurisdiction over the substantive claim by virtue of intervening mootness, it nonetheless retains jurisdiction to "consider collateral issues after an action is no longer pending." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395 (1990).   "[M]otions for costs or attorney's fees are independent proceedings supplemental to the original proceeding," and thus the imposition of costs and attorney's fees is not a judgment on the merits of an action for which there is no jurisdiction. Id. (omitting internal quotations marks).   "No Article III case or controversy is needed with regard to attorney's fees as such, because they are but an ancillary matter over which the district court retains equitable jurisdiction even when the underlying case is moot.   Its jurisdiction outlasts the 'case or controversy.'" Zucker v. Occidental Petroleum Corp., 192 F.3d 1323, 1329 (9th Cir. 1999).   "[A] determination of mootness of the action on the merits [does not] preclude an award of attorney's fees..." Spangler, 832 F.2d at 297 n.1. See also Reiser v. Del Monte Properties Co., 605 F.2d 1135, 1140 (9th Cir.

1979)(holding that "attorney's fees question ancillary to the case survives independently under the court's equitable jurisdiction.").

Several district courts have confronted claims for attorney's fees under 35 U.S.C. § 285, notwithstanding intervening mootness or dismissal of the underlying substantive claims.  For example, in Knauf Fiber Glass v. CertainTeed Corp., 2004 WL 771257 (S.D. Ind. 2004), Knauf Fiber Glass ("Knauf") brought a patent infringement claim against CertainTeed Corp. ("CertainTeed"), to which CertainTeed counterclaimed for a declaratory judgment of non-infringement based on the unenforceability and invalidity of the patent.  Subsequently, Knauf sought voluntarily to dismiss its infringement claim pursuant to Fed. R. Civ. P. 41(a)(2).  Knauf also signed a covenant not to sue CertainTeed for infringement of the patent-in-suit.

Knauf argued that, under Super Sack, the covenant not to sue divested the district court of jurisdiction over CertainTeed's counterclaim for declaratory relief.  Like Samsung, CertainTeed wished "to pursue its efforts to have [the patent-in-suit] declared unenforceable for inequitable conduct, to have the case declared 'exceptional' under 35 U.S.C. § 285, and to recover its attorney fees and costs incurred in th[e] case."  Id. at *1.  As the court noted, the critical distinction between Super Sack and Knauf was the fact that Knauf sought coercive relief in addition to a declaratory judgment.  The Super Sack court did not address whether

a covenant not to sue divests a district court of subject matter jurisdiction over a request for coercive relief, such as a demand for attorney's fees under section 285.

In Knauf, the court determined that it retained jurisdiction over the counterclaim for attorney's fees and costs under 35 U.S.C. § 285, notwithstanding the covenant not to sue.  As authority, the court cited several cases in which the Federal Circuit did not raise the issue of subject matter jurisdiction where the district court exercised jurisdiction to decide claims for attorney's fees under section 285 even after the underlying infringement claims had been dismissed.  See Cambridge Products, Ltd. v. Penn Nutrients, Inc., 962 F.2d 1048, 1050 (Fed. Cir. 1992); H.R. Techologies, Inc. v. Astechnologies, Inc., 275 F.3d 1378, 1386 (Fed. Cir. 2002); Paragon Podiatry Lab. v. KLM Labs., 984 F.2d 1182, 1188 n.6 (Fed. Cir. 1993).  In the view of the Knauf court, when a party seeks coercive relief under section 285, the dismissal of all other claims "simply [does] not render moot the [party's] claims for coercive relief in the form of attorney fees."  Knauf, 2004 WL 771257 at *2.[2]

In Knauf, the court concluded that the claim for coercive relief under section 285 "continue[d] to present a live case or

_____

[2] The likely exception, which the Knauf court does not directly address, would seem to be a case where the district court never had subject matter jurisdiction over the underlying case in the first place.  That, however, is not an issue that was before the Knauf court or this Court.

controversy arising under federal law," and was "ancillary to a case that ha[d] been within the court's subject matter jurisdiction." Id. Thus, the court retained jurisdiction over the claim for relief under section 285 and had "jurisdiction to make the relevant factual and legal determinations needed to decide the merits of the counterclaim."[3] Id. See also Highway Equipment Co., Inc. v. FECO, Ltd., 2005 WL 936469, *3-4 (N.D. Iowa 2005), appeal docketed, No. 1:03cv00076 (8th Cir. 2005)(holding that court retained subject matter jurisdiction to decide claim for attorney's fees under 35 U.S.C. § 285, notwithstanding covenant not to sue which mooted underlying claims); Matsushita Battery Industrial Co. v. Energy Conversion Devices, Inc., 1997 WL 811563 (D. Del. 1997)(same).

In Chris-Craft Industries, Inc. v. Monsanto Co., 59 F.R.D. 282 (C.D. Cal. 1973), a patent holder dedicated its patent to the public after the plaintiff sought a declaratory judgment of noninfringement and invalidity. Similar to Knauf, the court held that "[i]nasmuch as the dedication of the patent moots any dispute concerning its validity or infringement, it would seem appropriate

---

[3]Following its holding that it retained jurisdiction, the Knauf court dismissed without prejudice CertainTeed's counterclaim seeking a declaratory judgment of non-infringement and invalidity. Id. at *3. It then denied CertainTeed's motion for summary judgment on the issue of invalidity as moot. Id. The matter left to be decided was the motion for summary judgment as to whether Knauf had engaged in inequitable conduct in obtaining the patent-in-suit, which was the basis for the claim for attorney's fees under section 285. Id. The court denied the motion on its merits.

for this court to dismiss the present case for want of a justiciable controversy.  Such a dismissal does not deprive the court of jurisdiction to award attorney's fees under § 285."  Id. at 284.  See also Technimark, 14 F.Supp.2d at 765-766 (retaining jurisdiction over claim for attorney's fees, despite granting motion to dismiss counterclaim for declaratory judgment of invalidity after patent dedicated to public).  In Bioxy, Inc. v. Birko Corp., 935 F.Supp. 737, 744 (E.D.N.C. 1996)and Vardon Golf Co., Inc., v. Allied Golf Corp., 1995 WL 654137, *2 (N.D. Ill. 1995), patent holders moved to dismiss infringement claims with prejudice pursuant to Rule 41(a)(2).  Notwithstanding the courts' dismissal of the defendants' declaratory judgment counterclaims, the courts held that they retained jurisdiction to decide claims for attorney's fees under 35 U.S.C. § 285.  Thus, the weight of authority demonstrates that Samsung's attorney's fee claim survives the Rambus Covenants.

In sum, the intervening mootness caused by the Rambus Covenants did not divest the Court of jurisdiction over Samsung's attorney's fees claims.  The section 285 claim is collateral to the action for declaratory judgment, and thus no Article III case or controversy need remain in order to preserve the Court's jurisdiction.  Thus, whether analyzed under the rubric of "collateral issues" jurisdiction or that of "coercive relief," it appears quite clear that the Rambus Covenants, and the consequent

order dismissing Rambus' counterclaims with prejudice, do not deprive the Court of jurisdiction to decide Samsung's claim for attorney's fees.

**B.   Rambus' Offer To Pay Samsung's Reasonable Attorney's Fees**

The remaining issue is whether the Court is divested of jurisdiction to decide Samsung's attorney's fees claim by Rambus' offer to pay such of Samsung's reasonable attorney's fees as Samsung can prove that it incurred in this action.[4]  Rambus argues that, in making the offer to settle the attorneys fees claim, it has offered full relief to Samsung, thereby mooting the exceptional case and prevailing party issues, as well as the issue as to the quantum of any attorney's fees awarded, notwithstanding the fact that Samsung refused Rambus' offer to settle the attorney's fee claim.

In support of this contention, Rambus cites a string of decisions for the proposition that, when a defendant offers to provide all the relief which the plaintiff demands, or to which the plaintiff is entitled by statute, no Article III case or controversy exists.  Without citing any authority that extends this principle to a claim for attorney's fees under section 285, Rambus then proposes a leap of logic to the proposition that an offer to

---

[4]  Samsung's Response To Rambus's Memorandum On Remaining Issues (Docket No. 77), p. 2 (citing Ex. A to Samsung's Memorandum Outlining The Remaining Proceedings and Issues Requiring Disposition (Docket No. 75) (emphasis added)).

pay attorney's fees "moots" the Court's jurisdiction over Samsung's claim for attorney's fees pursuant to section 285.

The majority of the decisions cited by Rambus involve offers of judgment under Fed. R. Civ. P. 68 which provides that "a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued."  Fed. R. Civ. P. 68.  If the offer is not accepted and "the judgment finally obtained by the offeree is not more favorable than the offer," then "the offeree must pay the costs incurred after making the offer." Id.  "The plain purpose of Rule 68 is to encourage settlement and avoid litigation.  The Rule prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits."  Marek v. Chesny, 473 U.S. 1, 5, 105 S.Ct. 3012, 3014 (1985)(omitting internal citations).  The cost shifting provisions of Rule 68 are intended to induce settlements, but not to strong arm plaintiffs into settling against their better judgment.

Where, however, the defendant has made an offer of judgment for the full amount of relief requested by the plaintiff, or for the maximum statutory amount which the plaintiff could recover, no case or controversy remains with respect to the underlying claim. For example, in Abrams v. Interco, Inc., 719 F.2d 23, 32-33 (2nd

Cir. 1983), the court dismissed the plaintiff's antitrust action pursuant to 15 U.S.C. § 1 as moot where the defendant, acting under Rule 68, offered to pay full damages, costs, and attorney's fees. See also Zimmerman v. Bell, 800 F.2d 386, 390 (4th Cir. 1986) (affirming dismissal of underlying securities fraud claim for lack of jurisdiction where defendant offered full amount which plaintiff claimed to be entitled); Rand v. Monsanto Co., 926 F.2d 596, 598 (7th Cir. 1991)(same).[5]

Whether and how Abrams should apply to Rambus' unaccepted offer to pay reasonable attorney's fees is not immediately

_____

[5]It is worth noting that the courts dealing with offers of judgment for full relief have failed to reach a uniform outcome as to whether judgment for the plaintiff should be compelled or whether, instead, judgment should be entered in favor of the defendant following a dismissal for lack of subject mater jurisdiction under Rule 12(b)(1).  See Abrams, 719 F.2d 23 at 26 (affirming dismissal under Rule 12(b)(1), where district court subsequently ordered parties to settle a judgment and preserved jurisdiction to decide amount of attorney's fees); Zimmerman, 800 F.2d at 390 (affirming district court's dismissal of claims under Rule 12(b)(1), but no indication that judgment for plaintiff compelled); Rand, 926 F.2d at 598 ("Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed.R.Civ.P. 12(b)(1), because he has no remaining stake."); Ambalu v. Rosenblatt, 194 F.R.D. 451 (E.D.N.Y. 2000)(holding that plaintiff's "complaint [wa]s dismissed for lack of subject matter jurisdiction and [that] judgment shall be entered against defendant [] in accordance with its Rule 68 offer of judgment."); Wilner v. OSI Collection Services, Inc., 198 F.R.D. 393, 395 (S.D.N.Y. 2001)("[T]his court is not aware of any decision by Wilner to accept or reject the offer.  However, Wilner must do one or the other, and whether he chooses Door # 1 or Door # 2, the prize is the same.  If he accepts OIS' offer, the case is moot.  If he declines, the case would be indistinguishable from Ambalu, and I would compel him to accept the offer.").

apparent.  Abrams can be distinguished from this action in three ways: (1) Abrams involved a Rule 68 offer of judgment, whereas Rambus simply made a settlement offer with respect to attorney's fees; (2) the statute providing for attorney's fees in Abrams defined attorney's fees as "costs," whereas the patent statutes separate costs and attorney's fees; and (3) the fee shifting statute in Abrams made attorney's fees mandatory for the prevailing party, whereas 35 U.S.C. § 285 has an "exceptional case" requirement and commits attorney's fees to the discretion of the district court.  The next task then is to determine whether any of these distinctions make a difference.

### 1.  Offers of Judgment

The first question is whether the offer of judgment in Abrams was key to mooting the underlying case or controversy, or rather whether a bare offer to settle would have had the same effect. Rambus, relying on Murphy v. Equifax Check Services, 35 F.Supp.2d 200 (D. Conn. 1999), argues that its bare offer to settle has the same effect as an offer of judgment.  In Murphy, the plaintiff brought an action under the Fair Debt Collection Practices Act, the court appeared implicitly to assume that, and with respect to mooting the underlying controversy, there is no difference between an offer of judgment for full relief and a settlement offer for full relief.

33

The defendant in <u>Murphy</u> never acknowledged a violation of the FDCPA, but decided not to litigate in light of the costs and attorney's fees that it would incur.  The defendant offered the plaintiff $1,000 (the maximum statutory damages) plus reasonable fees and costs.  The court described this as a settlement offer, and there is no indication that there was a formal offer of judgment under Rule 68.  The court, citing decisions involving offers of judgment, held that "having been offered the maximum amount of damages which she was entitled to recover under the FDCPA, plus reasonable attorney's fees and costs, plaintiff no longer ha[d] a personal stake in the outcome of th[e] litigation for purposes of meeting the case-or-controversy requirement of Article III, and her complaint against defendant [] should be dismissed."[6]  <u>Id.</u> at 203-204.

However, the importance of a formal offer of judgment in the cases on which <u>Murphy</u> relies simply cannot be ignored. "Settlements often do not involve the entry of a judgment against the defendant, as compared to a judgment of dismissal, so that from the plaintiff's perspective the willingness of the defendant to allow judgment to be entered has substantial importance since

---

[6]In <u>Murphy</u>, the plaintiff and her counsel had agreed that the counsel would have full authority respecting settlement.  The court, in <u>Murphy</u>, stated that this unique arrangement had no effect on its decision.  However, it is difficult to ascertain, from the decision, how the plaintiff otherwise could have lost a "personal stake" in the claim for attorney's fees.

judgments are enforceable under the power of the court." Wright, Miller & Cooper, 12 Fed. Prac. & Proc. Civ.2d § 3002. "Indeed, should a settlement not embodied in a judgment come unraveled, the court may be without jurisdiction to proceed in the case, which often becomes a breach of contract action for failure to comply with the settlement agreement." Id. See also Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994). The enforceability of an offer of settlement is no less important where a plaintiff has been compelled to accept the offer than where the plaintiff faces the prospect of cost-shifting under Rule 68 for rejecting the offer. Except for Murphy, there appears to be no authority for the proposition that a plaintiff can be compelled to accept an offer of settlement absent a formal offer of judgment. And, Murphy simply does not explain how that can be done.

Secondly, the formality of the offer of judgment is important to defendants as well. Unlike a typical offer of settlement, which, in most instances, may be withdrawn before acceptance, formal offers of judgment are irrevocable for a ten day period, after which they are deemed withdrawn if not accepted. Wright, Miller & Cooper, 12 Fed. Prac. & Proc. § 3004. See also Richardson v. National Railroad Passenger Corp., 49 F.3d 760, 765 (D.C. Cir. 1995). Under the theory of Murphy, if an offer of settlement for full relief is made, the plaintiff's acceptance is irrelevant, and acceptance of the offer is compulsory. That, of course, would mean

35

that the offer of settlement could not be withdrawn.  The notions that a defendant cannot withdraw an unaccepted settlement offer and that a plaintiff can be compelled to accept a settlement offer is untenable, as contrary to the law of contracts.  And, acceptance of those propositions would amount to a judicial amendment of Rule 68. More importantly, it would run afoul of the settled precept that "mere settlement negotiations may not be given the effect of a formal offer of judgment."[7] <u>Clark v. Sims</u>, 28 F.3d 420, 424 (4th Cir. 1994).

Rambus' offer to pay reasonable attorney's fees was not an offer of judgment.  It was a mere offer of settlement, which Samsung was free to accept or reject without further consequence. The Court declines Rambus' urging to apply <u>Murphy</u>.  Instead, Rambus' offer to settle will be accorded the effect of any other rejected offer to settle by giving it no effect.  It certainly will not be construed to deprive the Court of jurisdiction to decide any aspects of Samsung's claim for attorney's fees under 35 U.S.C. § 285.

### 2.   Attorney's Fees As Costs

The next inquiry, in examining the differences between <u>Abrams</u> and this action, is whether the offer of judgment in <u>Abrams</u>

---

[7]Indeed, there are other cases dealing with dismissals of actions under the FDCPA for lack of jurisdiction, following offers of full relief, but they involved formal offers of judgment. <u>Wilner</u>, 198 F.R.D. at 395; <u>Ambalu</u>, 194 F.R.D. at 452.

resolved the issue of whether, and how, attorney's fees would be awarded.  _Abrams_ and its progeny dealt with the mootness of the underlying action, not the claim for attorney's fees.  Neither _Abrams_, nor its progeny, articulated the basis for the awards of attorney's fees that they entered.  Hence, it is appropriate to determine whether the offer of judgment mandated an award of attorney's fees or whether, instead, the offer to pay attorney's fees simply rendered the question moot.

"Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority.  In other words, all costs properly awardable in an action are to be considered within the scope of Rule 68 'costs.'"  _Marek_, 105 S.Ct. at 3016.  "[A]bsent congressional expressions to the contrary, where the underlying statute defines 'costs' to include attorney's fees, [] such fees are to be included as costs for purposes of Rule 68."  _Id._  In antitrust actions, 15 U.S.C. § 15 provides that persons injured "by reason of anything forbidden in the antitrust laws...shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."  Hence, the offer of judgment in _Abrams_ (an antitrust case) automatically incorporated attorney's fees into costs, without regard to the defendant's offer to pay them.[8]

---

[8]It should also be noted that, under the terms of the antitrust statute, an award of attorney's fees to the prevailing party was mandatory.

In Wilner and Ambalu, however, the offer of judgment was made under the FDCPA.  Among the damages that can be awarded under the FDCPA are "the costs of the action, together with a reasonable attorney's fee as determined by the court."  15 U.S.C. 1692k(a)(3). The text, "costs of the action, together with a reasonable attorney's fee" (FDCPA) is not significantly different than the text, "cost of suit, including a reasonable attorney's fee" (antitrust statute).  For that reason, and considering that the FDCPA treats costs and attorney's fees in the same statutory provision, it is reasonable to conclude that, in the FDCPA, attorney's fees are part of costs.

However, there are decisions that construe attorney's fees not to be a facet of costs under the FDCPA.  See Marek, 105 S.Ct. at 3034-3038 (Brennan, J., dissenting); Chambers v. Manning, 169 F.R.D. 5 (D. Conn. 1996)(citing Marek); Shapiro v. Credit Protection Ass'n I, Inc., 53 F.Supp.2d 626 (S.D.N.Y. 1999)(citing Chambers).  That aspect of Marek is found in the heading of a table appended to a dissent.  And, neither Chambers nor Shapiro explain the reasoning in support of their terse comments on the matter. Moreover, those courts  determined that the offer of judgment had decided the entitlement to an award of attorney's fees, leaving only a determination to be made as to amount.  That, of course, suggests that attorney's fees were a component of costs.

There is, however, a more tangible reason to differentiate between an offer of settlement and an offer of judgment. Specifically, an offer of judgment, as previously noted, results in a judgment. That, in turn, can result in a determination of prevailing party status. And, where a statute does not treat attorney's fees as a component of costs, attorney's fees are awardable only if a litigant is a prevailing party. To be a prevailing party, there must be some sort of judicially sanctioned change in the relationship between the parties. Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources, 532 U.S. 598, 605 (2001)).

Offers of judgment, both accepted and compelled, bear significant similarities to consent decrees. "A consent decree, because it is entered as an order of the court, receives court approval and is subject to the oversight attendant to the court's authority to enforce its orders, characteristics not typical of [private] settlement agreements." Smyth v. Rivero, 282 F.3d 268, 281 (4th Cir. 2002). With respect to prevailing party status, a consent decree, "although it is a privately negotiated form of relief and does not always include an admission of liability by the defendant, [] nevertheless involves judicial approval and oversight that may suffice to demonstrate the requisite court-ordered change in the legal relationship between the plaintiff and the defendant." Id. (quoting Buckhannon, 532 U.S. at 604)(omitting internal

39

quotation marks).  The compelled acceptance of an offer of judgment is similarly subject to court oversight and enforcement, indicative of the type of court-ordered change that gives rise to prevailing party status.

Thus, when a plaintiff has been compelled to accept an offer of judgment, the prevailing party requirement is satisfied and an award of attorney's fees is permitted where otherwise authorized. The award of attorney's fees by the <u>Wilner</u> and <u>Ambalu</u> courts was appropriate for this reason.  In <u>Murphy</u>, the court followed suit even though the compulsion was not occasioned by an offer of judgment.  But, in <u>Murphy</u>, the court was not called on to decide whether the plaintiff was a prevailing party.  It merely assumed that to be the case.[9]

In sum, there are legally significant differences between judgments entered under Rule 68 and the offer of settlement approach sanctioned by <u>Murphy</u> and urged here by Rambus.  <u>Murphy</u> is an outrider that has attracted no following and, for the reasons set forth above, it will not be followed here.

### 3.   Exceptional Case Requirement

It is significant that, in patent cases, attorneys fees are not awarded to all prevailing parties.  Indeed, they are permitted only in exceptional cases.  A principal purpose of the exceptional

---

[9] Of course, in this action Rambus has made quite clear that it does not consider Samsung to be a prevailing party and has stated its intention to oppose a fee award on that basis as well.

40

case provision is to provide "an award of fees 'where it would be grossly unjust that the winner be left to bear the burden of his own counsel which prevailing litigants normally bear.'"  Rambus, Inc. v. Infineon Tech. AG, 155 F.Supp.2d 668, 673 (E.D. Va. 2001) (emphasis in original) (internal citations omitted).  The other principal purpose of the exceptional case provision is to deter bad faith litigation, thereby protecting "litigants, the courts and the judicial process from abuse."  Id.  To authorize fees under the exceptional case provision, a court must find "'unfairness, bad faith or inequitable conduct on the part of the unsuccessful patentee.'"  Id.

These requirements differentiate claims for attorney's fees under section 285 from claims made pursuant to fee-shifting statutes where a prevailing party is entitled to fees simply because the legislature has decided that is an appropriate deviation from the "American rule."  For that reason, and because there is a public interest and systemic integrity component to exceptionality, a unilateral, and unaccepted, offer to pay fees in a patent case simply cannot deprive a court of jurisdiction to decide a fee claim under section 285.

Here, Samsung claims that Rambus made its counterclaims in bad faith.  Rambus denies that assertion.  And, an award of attorney's fees cannot be made until the predicate for finding an exceptional case is resolved.  The Court retains jurisdiction to do precisely

41

that, notwithstanding Rambus' unaccepted settlement offer.  As the exceptional case issue is presented in this action, it will be necessary to decide some of the issues that also were presented by the claims for declaratory judgment.  However, that will be as a function of adjudicating the attorney's fee claims, not of entering a declaratory judgment.

## CONCLUSION

For the foregoing reasons, Rambus' Motion to Dismiss is granted in part and denied in part.  Samsung's action for declaratory judgment is dismissed without prejudice as moot.  The Court will retain jurisdiction to decide Samsung's claim for attorney's fees pursuant to 35 U.S.C. § 285.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

_____
                           /s/
Robert E. Payne
United States District Judge


Richmond, Virginia
Date: November 8, 2005