**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

SAMSUNG ELECTRONICS CO.,
LTD.,

    Plaintiff,

v.                                  Civil Action No. 3:05cv406

RAMBUS INC.,

    Defendant.


**MEMORANDUM OPINION**

Samsung Electronics Co., Ltd. ("Samsung") initiated this action seeking a declaratory judgment against Rambus Inc. ("Rambus"). The matter is now before the Court on SAMSUNG'S MOTION FOR FINDING THAT SAMSUNG IS A PREVAILING PARTY AND THE AWARD OF REASONABLE ATTORNEY'S FEES (Docket No. 87) and Samsung's MOTION FOR FINDING THAT THIS IS AN EXCEPTIONAL CASE AND FOR ATTORNEY'S FEES UNDER 35 U.S.C. § 285 (Docket No. 89).

Samsung asks the Court to impose the sanction of attorney's fees under 35 U.S.C. § 285. Samsung also seeks the imposition of sanctions under the Court's inherent powers. This opinion addresses the contention of Rambus that the Court lacks subject matter jurisdiction to decide Samsung's motion because Rambus has made an offer of judgment to pay Samsung's attorney's fees. For the reasons set forth below, the Court finds that it has subject matter jurisdiction to rule on SAMSUNG'S MOTION FOR FINDING THAT SAMSUNG IS A PREVAILING PARTY AND THE AWARD OF REASONABLE

ATTORNEY'S FEES (Docket No. 87) and SAMSUNG'S MOTION TO FIND THIS AN EXCEPTIONAL CASE AND FOR ATTORNEY'S FEES UNDER 35 U.S.C. § 285 (Docket No. 89).

## FACTUAL AND PROCEDURAL BACKGROUND

Samsung filed this action seeking a declaratory judgment, inter alia, that four patents held by Rambus are unenforceable by virtue of the doctrines of unclean hands, equitable estoppel, patent misuse, waiver, laches, and laches in the United States Patent and Trademark Office ("PTO"). The patents-in-suit were the same as the four patents-in-suit in Rambus, Inc. v. Infineon Technologies AG, No. CIV. A. 3:00cv524 (E.D. Va.) ("Rambus v. Infineon"): (1) U.S. Pat. No. 5,953,263 ("the '263 Patent"); (2) U.S. Pat. No. 5,954,804 ("the '804 Patent"); (3) U.S. Pat. No. 6,032,214 ("the '214 Patent"); and (4) U.S. Pat. No. 6,034,918 ("the '918 Patent"). Thereafter, Rambus asserted counterclaims against Samsung, alleging infringement of the '263 and the '918 patents.

### A.    Rambus v. Infineon Litigation

Rambus develops and licenses technology to companies that manufacture semi-conductor memory devices. Its patents are directed to various dynamic random access memory devices ("DRAMs"), Rambus DRAMs ("RDRAMs"), Synchronous Dynamic Random Access Memory ("SDRAM"), and Double Data Rate Synchronous Dynamic Random Access Memory ("DDR-SDRAM"). See Rambus, Inc. v. Infineon Tech. AG, 164

F.Supp.2d 743, 747-748 (E.D. Va. 2001).  Beginning in early 1998 and continuing through 1999 and 2000, Rambus developed, refined, and implemented a patent licensing and litigation strategy, which was aimed at several specifically identified DRAM manufacturers. Among the targeted DRAM manufacturers were Infineon, Samsung, and Hynix Semiconductor, Inc. ("Hynix").

Pursuant to that strategy, in June 2000, Rambus asserted, in this Court, patent infringement claims against Infineon with respect to the same four patents-in-suit that were at issue in Samsung's action for declaratory judgment.  After extensive discovery and issuance of a claim construction opinion, there was a two week trial on Rambus' infringement claims, as well as Infineon's counterclaims.  Ultimately, the judgment was appealed to the United States Court of Appeals for the Federal Circuit, which affirmed in part, reversed in part, and remanded for further proceedings.  Additional discovery was conducted at that time and, during those proceedings, it was determined that spoliation of documents by Rambus warranted the piercing of Rambus' attorney-client privilege and work product protection.  See Rambus, Inc. v. Infineon Tech. AG, 222 F.R.D. at 296-99.  Subsequent discovery was permitted on the issue of spoliation and other issues.

In February 2005, a bench trial was held on Infineon's defense of unclean hands, which was based on Rambus' alleged spoliation of evidence and other litigation misconduct.  Simultaneously, a

corollary evidentiary proceeding was held with respect to spoliation of evidence, for which a sanction of dismissal was requested. At the conclusion of the trial of those issues, the Court ruled from the bench that Infineon had proven, by clear and convincing evidence, that Rambus was liable for unclean hands, thus barring Rambus from enforcing the four patents-in-suit. Additionally, the Court ruled that Infineon had proven, by clear and convincing evidence, that Rambus had spoliated evidence, for which dismissal was the appropriate sanction. Following that ruling, and before the Court issued findings of fact and conclusions of law, Rambus and Infineon settled the case.

### B. Background And Procedural History Of This Action

Also pursuant to its licensing and litigation strategy, and while Rambus was prosecuting its actions against Infineon, Rambus entered license negotiations with Samsung. In October 2000, the parties entered into a license agreement that covered, inter alia, the patents-in-suit in Samsung's action for declaratory judgment. See Samsung Electronics Co., Ltd. v. Rambus Inc., 386 F.Supp.2d 708, 712 (E.D. Va. 2005). Samsung and Rambus amended that license agreement in 2001 because of developments in the litigation between Rambus and Infineon. See id.

Samsung and Rambus began to renegotiate the terms of the license agreement in July 2004. As part of those negotiations, the parties discussed a so-called "Standstill Agreement" by which any

4

litigation over the license agreement would be delayed for a year while negotiation continued. However, the negotiations did not go to the liking of Rambus. On June 6, 2005, when Samsung refused to accede to Rambus' demand for a contract provision that would allow Rambus to file litigation first, in the venue of its choice, Rambus terminated the discussions respecting an extension of the license agreement and the license agreement itself. Simultaneously, Rambus filed a patent infringement action against Samsung in the United States District Court for the Northern District of California. See id., at 713-15. In that action, Rambus claimed that Samsung was infringing, inter alia, the '263 and '918 patents, two of the patents-in-suit that were at issue in Rambus v. Infineon and this action.

On June 7, 2005, one day after Rambus brought patent infringement claims against Samsung in the Northern District of California, Samsung filed this action for declaratory judgment, and filed its First Amended Complaint shortly thereafter. See id. at 712. Samsung's complaint and the amended complaint proceeded on the clearly articulated theory that the decision on the spoliation and unclean hands issues in Rambus v. Infineon barred any claim for infringement of the patents-in-suit. On July 12, 2005, Rambus counterclaimed alleging infringement of the '263 and '918 patents, and then moved to transfer this action to the Northern District of

California so that Rambus could press those infringement claims there.

On August 5, 2006, Samsung moved for partial summary judgment on the issues of spoliation and unclean hands. Samsung argued that the Court's bench ruling in <u>Rambus v. Infineon</u> with respect to Rambus' spoliation and unclean hands should be given collateral estoppel effect and consequently that the four patents-in-suit were unenforceable. A briefing schedule was set for Samsung's motion for partial summary judgment, and argument was set for September 21, 2005.

### C.    Covenants Not To Sue

On September 6, 2005, six days before responding to Samsung's motion for partial summary judgment, Rambus filed an "unconditional" and "irrevocable" covenant not to assert patent infringement claims against Samsung with respect to the '804 and '214 patents ("First Covenant"). The First Covenant expressly extended to actions in the International Trade Commission as well. The scope of the First Covenant extended to "any and all methods, processes, and products made, used, offered for sale, sold, or imported by Samsung currently or at any time prior to the date of this covenant." However, the First Covenant did not extend to any other patents held by Rambus, related or unrelated, and Rambus expressly declined to concede the merits of Samsung's allegation that the '804 and '214 patents were unenforceable and invalid.

6

On September 12, 2005, Rambus filed its opposition to Samsung's motion for partial summary judgment on the theory of unclean hands based on spoliation. On September 13, 2005, Rambus and Samsung stipulated that the First Covenant "eliminates any need for declaratory relief that Samsung may have had with respect to the '804 Patent and the '214 Patent." Stipulation (Docket No. 42). Samsung, however, reserved its right to request that the Court declare the case exceptional and order Rambus to pay Samsung's attorney's fees under 35 U.S.C. § 285. Rambus expressly reserved the right to oppose such relief, and to argue that the First Covenant moots such relief. The stipulation also provided that Samsung's declaratory judgment action with respect to the '804 and '214 patents was to be dismissed without prejudice.

On September 14, 2005, Rambus' motion to transfer this action to the Northern District of California was denied. On the same date, counsel were ordered to confer about procedures to expedite the trial of this action and to report the results thereof to the Court on September 21, 2005. On September 20, 2005, Samsung filed its reply brief on its motion for partial summary judgment.

On September 21, 2005, the Court gave notice of its intent to take judicial notice of the record of the spoliation and unclean hands bench trial in Rambus v. Infineon. The hearing on Samsung's motion for partial summary judgment was rescheduled to September 28, 2005.

Also, on September 21, 2005, Mr. John Danforth, Rambus' General Counsel, signed a second covenant not to sue Samsung ("Second Covenant"), this time with respect to the '263 and '918 patents. The Second Covenant was filed with the Court on September 22, 2005. The language in the Second Covenant with respect to the covenant not to sue is identical to the language in the First Covenant. Rambus used the Second Covenant as a vehicle to withdraw its counterclaims in this action as well as its claims against Samsung in the Northern District of California, Rambus Inc. v. Samsung Electronics Co., Ltd., et al., Case No. C-05-02298-RMW (N.D. Cal.), which asserted infringement of the '263 and '918 patents. Rambus' counterclaims in this action were dismissed with prejudice by Order entered on September 28, 2005.

On September 28, 2005, the parties argued Samsung's motion for partial summary judgment. The motion was then submitted for decision.

Contemporaneous with the filing of the Second Covenant, on September 21, 2005, Rambus filed its motion to dismiss Samsung's declaratory judgment action for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Rambus contended that the First and Second Covenants ("Rambus Covenants") moot any case or controversy, thereby depriving the Court of subject matter jurisdiction, including jurisdiction to rule on Samsung's request for attorney's fees.

Notwithstanding its argument on the latter point, on October 3, 2005, Rambus made a written offer to Samsung to pay reasonable attorney's fees incurred by Samsung in this action.  In Rambus' view, that offer along with the Rambus Covenants "afford[ed] Samsung all of the relief to which it may otherwise be entitled in this action and therefore moots any further proceedings on the merits of any of Samsung's claims, including its allegations that this action qualifies as an exceptional case entitling Samsung to recover its reasonable attorney's fees."[1]  However, in making its settlement offer, Rambus expressly declined to concede the merits of Samsung's allegations.  Samsung argued that the Court retained jurisdiction not only to decide whether Samsung was entitled to attorney's fees under 35 U.S.C. § 285 and the Court's inherent power, but also to issue declaratory relief by ruling on Samsung's motion for partial summary judgment.

On November 8, 2005, the declaratory judgment action was dismissed without prejudice as moot.  The motion to dismiss Samsung's claim for attorney's fees was denied.  See Samsung Elec. Co. v. Rambus Inc., 398 F.Supp.2d 470 (E.D. Va. 2005).  With respect to Samsung's claim for attorney's fees, the Court then set a schedule for submission of the Rambus v. Infineon record, for briefing the issue of attorney's fees, and for submission of

---

[1]Reply In Support of Motion by Defendant Rambus Inc. To Dismiss Action (Docket No. 73), Ex. A (October 3, 2005 letter from Gregory Stone to David Healey).

proposed findings of fact and conclusions of law on the issue of exceptionality.  A hearing was set for December 15, 2005.

   **D.    Offer of Judgment**

   On November 29, 2005, Rambus made an offer of judgment to Samsung under Fed. R. Civ. P. 68[2] for the amount of Samsung's attorney's fees of $476,542.30, plus the full amount of any reasonable additional attorney's fees and costs incurred by Samsung in connection with this action after Samsung's November 22, 2005 filing, in which Samsung had specified the amount of attorney's fees it had incurred as of that date.  Rambus contends that the offer of judgment moots the issue of attorney's fees, and thus that the Court is divested of subject matter jurisdiction to rule on the prevailing party and exceptional case issues.

   In Samsung's view, Rambus' offer of judgment did not render the attorney's fees claims moot.  Samsung argues that the Court should decide the prevailing party and exceptional case issues under 35 U.S.C. § 285.  Samsung also argues that the Court has

---

   [2]While Rambus purported to make an offer of judgment with respect to attorney's fees under Fed. R. Civ. P. 68, Rule 68 is inapplicable in this context.  The theory of Samsung's claim for attorney's fees is that Rambus acted in bad faith by virtue of spoliation and its assertion of counterclaims for infringement of the '263 and '918 patents after the Court had ruled in <u>Rambus v. Infineon</u> that these patents were unenforceable based on Rambus' unclean hands.  Thus, with respect to the claim for attorney's fees, Rambus is the counterclaim plaintiff.  The cost-shifting provided for in Rule 68 is limited to offers of judgment made by defendants.

jurisdiction to sanction Rambus under its inherent powers and urges that such sanctions should be imposed.

**DISCUSSION**

The jurisdictional issues overlap to some extent because, whether under § 285 or under the Court's inherent powers, the basic question is whether the Court retains power to sanction the misconduct of litigants in cases as to which at the outset there undoubtedly was subject matter jurisdiction.

## I.    Attorney's Fees As Sanctions

It is first appropriate to assess whether Samsung's request for attorney's fees under 35 U.S.C. § 285, or alternatively under the Court's inherent power, qualifies as a request for sanctions.

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The purpose of an award of attorney's fees under § 285 is two-fold. First, an award of fees is designed to "to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit," Central Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1578 (Fed. Cir. 1983), "where it would be *grossly unjust* that the winner be left to bear the burden of his own counsel which prevailing litigants normally bear." Badalamenti v. Dunham's Inc., 896 F.2d 1359, 1364 (Fed. Cir. 1990)(quoting J.P. Stevens Co. v. Lex Tex Ltd., 822 F.2d 1047, 1052 (Fed. Cir. 1987))(emphasis in

11

original).  Additionally, § 285 is designed to deter parties from bringing or prosecuting bad faith litigation, see Mathis v. Spears, 857 F.2d 749, 754 (Fed. Cir. 1988).  That, of course, protects litigants, the courts, and the judicial process from abuse.

The exceptional case requirement bears all the hallmarks of a sanction for litigation misconduct.  A case is "exceptional," for purposes of § 285, only if the court finds "material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." Brooks Furniture Manf'g, Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005).  Absent this type of misconduct, "sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." Id.  And, indeed, the case law is replete with examples of the Federal Circuit referring to an award of attorney's fees under 35 U.S.C. § 285 as a sanction. See, e.g., Waymark Corp. v. Porta Systems Corp., 334 F.3d 1358, 1362 (Fed. Cir. 2003); State Industries, Inc. v. Mor-Flo Industries, Inc., 948 F.2d 1573, 1577 n.1 (Fed. Cir. 1991).

Likewise, attorney's fees granted under a court's inherent power qualify as sanctions.  "It has long been understood that 'certain implied powers must necessarily result to our Courts of

12

justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43 (1991)(quoting <u>United States v. Hudson</u>, 7 Cranch 32, 34, 3 L.Ed. 259 (1812)).  <u>See also</u> <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752, 764 (1980).  "[A] court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" <u>Chambers</u>, 501 U.S. at 45-46 (quoting <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. 240, 258-259 (1975)).  "[I]f a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party, as it may when a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'" <u>Id.</u> at 46 (citing <u>Hutto v. Finney</u>, 437 U.S. 678, 689 n.14 (1978)).

## II.  Jurisdiction To Impose Sanctions

Neither party cited any authority in which the issue presented here was decided in a sanction proceeding under § 285 or in a patent case involving the inherent judicial power to impose sanctions for misconduct.  Independent research has disclosed no case involving a jurisdictional challenge in such a context.  Nonetheless, there is authority which supplies guidance in resolving the jurisdictional point raised by Rambus.

For example, the Supreme Court of the United States provided valuable instruction in <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384 (1990). There, Hartmarx Corp. filed a breach of contract action against Danik, Inc. and Danik responded by filing an antitrust counterclaim. While that action was under way, Danik filed two additional antitrust complaints against Hartmarx, one of which alleged a nationwide price fixing conspiracy. Hartmarx moved to dismiss the price-fixing case and separately moved for sanctions under Rule 11. Shortly thereafter, Danik filed a notice of dismissal under Rule 41(a)(1)(I).[3] Notwithstanding the voluntary dismissal, the district court entertained the motion for sanctions (attorney's fees) under Rule 11 and, after a hearing, imposed sanctions on Danik and its counsel, Cooter & Gell.

Cooter & Gell argued that the voluntary dismissal of the antitrust claim under Rule 41 deprived the district court of jurisdiction to entertain the request for sanctions or to impose them. The Court of Appeals rejected that argument and so did the Supreme Court, holding that:

> The district court's jurisdiction, invoked by the filing of the underlying complaint, supports consideration of both the merits of the action and the motion for Rule 11 sanctions arising from that filing. As the 'violation of Rule 11 is complete when the paper is filed,' [citation omitted] a

---

[3] The action originally filed by Hartmarx against Danik, in which Danik filed an antitrust counterclaim, was separately resolved in favor of Hartmarx.

14

> voluntary dismissal does not expunge the Rule
> 11 violation.

Cooter & Gell, 496 U.S. at 395.  The Court explained the rationale

for that position by describing a request for sanctions (there

attorney's fees) under Rule 11 as a collateral issue which a

federal court has jurisdiction to resolve, even when the action is

no longer pending.  Id.  Indeed, the Court analogized the situation

as akin to a proceeding for criminal contempt wherein "a court may

make an adjudication of contempt and impose a contempt sanction

even after the action in which the contempt arose has been

terminated."  Id. at 396 (citing United States v. Mineworkers, 330

U.S. 258, 294 (1947) and Gompers v. Buck's Stove and Range Co., 221

U.S. 418, 451 (1911)).  And, then the Court held that:

> Like the imposition of costs, attorney's fees,
> and contempt sanctions, the imposition of a
> Rule 11 sanction is not a judgment on the
> merits of an action.  Rather, it requires the
> determination of a collateral issue: whether
> the attorney has abused the judicial process,
> and, if so, what sanction would be
> appropriate.  Such a determination may be made
> after the principal suit has been terminated.

Id.

In reaching this conclusion, the Court underscored that it is

important for district courts to retain the capacity to impose

sanctions to deal with misconduct (in that case, the filing of a

baseless complaint).  The Court held:

> Baseless filing puts the machinery of justice
> in motion, burdening courts and individuals
> alike with needless expense and delay.  Even

15

> if the careless litigant quickly dismisses the
> action, the harm triggering Rule 11's concerns
> has already occurred.  Therefore, a litigant
> who violates Rule 11 merits sanctions even
> after dismissal.  Moreover, the imposition of
> such sanctions on abusive litigants is <u>useful
> to deter</u> such misconduct.  If a litigant could
> purge his violation of Rule 11 merely by
> taking a dismissal, he would lose all
> incentive to 'stop, think and investigate more
> carefully before serving and filing papers.'

<u>Cooter & Gell</u>, 496 U.S. at 398 (citations omitted)(emphasis added).

Two years later, the Supreme Court decided <u>Willy v. Coastal Corp.</u>, 503 U.S. 131 (1992) wherein the Court was called upon "to decide whether a federal district court may impose sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure in a case in which the district court is later determined to be without subject matter jurisdiction." <u>Id.</u> at 137.  The Court affirmed the decision of the Fifth Circuit that, even in the absence of subject matter jurisdiction in the underlying action, the district court possessed authority to impose Rule 11 sanctions under the inherent powers of the federal courts.  In so doing, the Supreme Court held that:

> a final determination of lack of subject
> matter jurisdiction of a case in a federal
> court, of course, precludes further
> adjudication of it.  But such a determination
> does not automatically wipe out all
> proceedings had in the district court at a
> time when the district court operated under
> the misapprehension that it had jurisdiction.

<u>Id.</u>  Once again, the Court determined that the imposition of sanctions was a collateral issue, and then held that the resolution

of such issues "implicated no constitutional concern because it 'does not signify a district court's assessment of the legal merits of the complaint.'  It, therefore, does not raise the issue of a district court adjudicating the merits of a 'case or controversy' over which it lacks jurisdiction." <u>Willy</u>, 503 U.S. 140 (internal citations omitted).

Once again, recognizing the importance of preserving the ability of district courts to impose sanctions on misconduct, the Court explained that "the interest in having the rules of procedure obeyed . . . does not disappear upon a subsequent determination that the court was without subject matter jurisdiction."  <u>Id.</u> Accordingly, the Court held that there was "no constitutional infirmity under Article III in requiring those practicing before the courts to conduct themselves in compliance with the applicable procedural rules in the interim, and to allow the courts to impose Rule 11 sanctions in the event of their failure to do so." <u>Id.</u>

Both <u>Willy</u> and <u>Cooter & Gell</u> emphasize that sanction proceedings, whether by way of Rule 11, contempt, the inherent powers of the court, or statute (such as § 285) present collateral issues as to which a district court retains jurisdiction, notwithstanding a dismissal of the underlying case which gave it jurisdiction or even if it did not have subject matter jurisdiction at the outset.  And, in both cases, the Supreme Court grounded that conclusion in the need to assure (1) that litigants conduct

themselves properly in litigation before the district courts and
(2) that the district courts have the power to enforce appropriate
conduct by way of sanctions when the litigants deviate from
acceptable standards.

The same concerns animated the United States Court of Appeals
for the Eighth Circuit in Perkins v. General Motors Corp., 965 F.2d
597 (1992) when it rejected the contention that settlement of the
sanctions issue as part of a settlement of the merits rendered the
issue of sanctions moot. In Perkins, the court, citing Cooter &
Gell and Willy, affirmed an order imposing sanctions,
notwithstanding that the parties had settled the underlying case
and, as part of the settlement the defendant had joined the
plaintiff and her lawyer in moving the court to lift the sanction
order. In Perkins, the plaintiff sued General Motors for sexual
harassment under federal and state law. After the district court
granted summary judgment on the state law claim, there was a
lengthy bench trial on the federal claim which was resolved in
favor of General Motors. Thereafter, General Motors moved for
imposition of sanctions against both the plaintiff and her lawyer.
The district court granted the motion for sanctions. The plaintiff
was sanctioned under Rule 26(g) and the lawyer was sanctioned under
Rule 11, Rule 26(g) and 28 U.S.C. § 1927. As part of the
settlement, General Motors agreed not to collect the sanctions and
joined the plaintiff in a motion asking the court to vacate the

sanctions order, asserting that it was moot for lack of jurisdiction.[4]  Having surveyed the decisions of the Supreme Court in <u>Cooter & Gell</u> and <u>Willy</u>, the Eighth Circuit held that it was even more appropriate in <u>Perkins</u> to maintain jurisdiction over the sanction order than it was in either <u>Cooter & Gell</u> or <u>Willy</u>.  In that regard, the Eighth Circuit held that:

> The purpose of sanctions goes beyond reimbursing parties for expenses incurred responding to unjustified or vexatious claims. Rather, sanctions are 'designed to punish a party who has already violated the court's rules.'  <u>Willy</u>, 112 U.S. Ct. at 1081.  The interest of having rules of procedure obeyed does not disappear merely because an adversary chooses not to collect the sanctions.

<u>Perkins</u>, 965 F.2d at 599.  The court also emphasized that the parties could not "bargain away the court's discretion in imposing sanctions and the public's interest in ensuring compliance with the rules of procedure."  <u>Id.</u>[5]

---

[4] Such a motion would no longer be possible under the decision of the Supreme Court in <u>U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership</u>, 513 U.S. 18 (1994).

[5] Other courts have taken views contrary to that adopted by the Eighth Circuit, holding that an appeal of an order of sanctions is mooted by a subsequent settlement.  Those courts drew a distinction between sanctions made payable to an adversary and those made payable to the clerk of court.  <u>See</u> <u>Riverhead Savings Bank v. National Mortgage Equity Corp.</u>, 893 F.2d 1109, 1112 (9th Cir. 1990); <u>Kleiner v. First Nat'l Bank of Atlanta</u>, 751 F.2d 1193, 1199-1200 (11th Cir. 1985); <u>Clark Equip. Co. v. Lift Parts Mnf'g Co., Inc.</u>, 972 F.2d 817, 819 (7th Cir. 1992).  Those cases appear to have adopted the taxonomy developed by the Supreme Court in distinguishing between civil and criminal contempt.  <u>See</u>, <u>e.g.</u>, <u>Gompers v. Buck's Stove & Range Co.</u>, 221 U.S. 418 (1911); <u>International Union, United Mine Workers of America v. Bagwell</u>, 512

Sanctions issued under § 285 in the form of attorney's fees or sanctions entered under the inherent judicial power, whether attorney's fees or otherwise, are addressed to the informed discretion of the district courts, as guided by the applicable procedural and decisional law. Moreover, an imposition of sanctions, whether under § 285 or the court's inherent powers, is critically important to the ability of district courts to punish misconduct by the parties or counsel. That is particularly so where the misconduct can impose significant costs on the adversary of the offending party and can significantly burden the resources of the judicial system.

As the Supreme Court made clear in Cooter & Gell and Willy, sanctions serve not only to provide some redress to the offended party, but also to serve as a deterrent to protect the courts from abuse by litigants and lawyers alike. If a party that can easily afford to pay its opponent's attorney's fees could divest a court of jurisdiction to impose sanctions for misconduct by making an offer to pay monetary sanctions, there would be little to deter it from taking the risk of engaging in the misconduct in the first place. That result is neither acceptable nor constitutionally necessary under Cooter & Gell, Willy and Perkins. Indeed, those

U.S. 821, 829 (1994). However, these categories were developed in order to determine when a party was entitled to criminal due process, including an independent prosecutor and a jury. These categories were not intended to determine when an issue of sanctions has become moot.

decisions instruct that courts retain the jurisdiction to impose sanctions, even if the underlying litigation or the issue of sanctions is settled because the issue of sanctions is beyond the power of the parties to bargain away. Clearly, under those authorities, a unilateral, unaccepted offer to pay sanctions cannot deprive a court of jurisdiction to assess whether sanctions are called for and, if so, to impose them.[6]

Considering the decisions in <u>Cooter & Gell</u>, <u>Willy</u> and <u>Perkins</u>, the Court concludes that, notwithstanding Rambus' offer to pay

---

[6]The primary authority on which Rambus relies for its mootness argument is a line of cases that have held that when a defendant makes an offer of judgment for the full amount of relief requested by the plaintiff, or for the maximum statutory amount which the plaintiff could recover, no case or controversy remains with respect to the underlying claim. For example, in <u>Abrams v. Interco, Inc.</u>, 719 F.2d 23, 32-33 (2nd Cir. 1983), the Second Circuit affirmed the dismissal of the plaintiff's antitrust action pursuant to 15 U.S.C. § 1 as moot where the defendant, acting under Fed. R. Civ. P. 68, offered to pay full damages, costs, and attorney's fees. <u>See also</u> <u>Zimmerman v. Bell</u>, 800 F.2d 386, 390 (4th Cir. 1986) (affirming dismissal of underlying securities fraud claim for lack of jurisdiction where defendant offered full amount which plaintiff claimed to be entitled); <u>Rand v. Monsanto Co.</u>, 926 F.2d 596, 598 (7th Cir. 1991)(same). Those courts have ruled that where a defendant offers judgment for full relief, the plaintiff no longer has a personal stake in the underlying claim, thereby rendering the claim moot. In such a scenario, the party whose claim has been mooted cannot proceed to litigate the merits or seek an advisory opinion from the district court. <u>See</u> <u>Holstein v. City of Chicago</u>, 29 F.3d 1145, 1147 (7th Cir. 1994). Essentially, the defendant is allowing the plaintiff to take the equivalent of a default judgment. <u>See</u> <u>Greisz v. Household Bank (Illinois), N.A.</u>, 176 F.3d 1012, 1015 (7th Cir. 1999).

However, none of these cases involved an imposition of sanctions. Even in the cases where the offer of judgment included attorney's fees, the attorney's fees could not be characterized as sanctions. Thus, these cases are not applicable here.

Samsung's attorney's fees, it has jurisdiction to determine whether sanctions should be imposed under § 285 or under the inherent powers of the Court to regulate the conduct of litigation before it.

**CONCLUSION**

For the foregoing reasons, Rambus' suggestion that the motion for an exceptional case for attorney's fees be dismissed is rejected. Whether this is an exceptional case and whether Samsung is a prevailing party will be addressed in separate Memorandum Opinions.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

/s/
_____        _____
                                        Robert E. Payne
                                        United States District Judge


Richmond, Virginia
Date: July 18, 2006