IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SAMSUNG ELECTRONICS CO.,
LTD.,

     Plaintiff,

v.                                    Civil Action No. 3:05cv406

RAMBUS INC.,

     Defendant.


**MEMORANDUM OPINION**

     Samsung Electronics Co., Ltd. ("Samsung") has moved for an award of attorney's fees against Rambus Inc. ("Rambus"), under 35 U.S.C. § 285 and the Court's inherent power.  In deciding whether an award of attorney's fees is appropriate under § 285, it is necessary to determine whether Samsung is a "prevailing party." For the reasons set forth below, the Court finds that Samsung is a prevailing party.  Whether Samsung is entitled to attorney's fees is the subject of a separate opinion which resolves SAMSUNG'S MOTION FOR FINDING THAT THIS IS AN EXCEPTIONAL CASE AND FOR ATTORNEY'S FEES UNDER 35 U.S.C. § 285 (Docket No. 89).


**FACTUAL AND PROCEDURAL BACKGROUND**

     Samsung filed this action seeking a declaratory judgment, _inter alia_, that four patents held by Rambus are unenforceable by virtue of the doctrines of unclean hands, equitable estoppel, patent misuse, waiver, laches, and laches in the United States

Patent and Trademark Office ("PTO").  The patents-in-suit were the same as the four patents-in-suit in Rambus, Inc. v. Infineon Technologies AG, No. CIV. A. 3:00cv524 (E.D. Va.) ("Rambus v. Infineon"): (1) U.S. Pat. No. 5,953,263 ("the '263 Patent"); (2) U.S. Pat. No. 5,954,804 ("the '804 Patent"); (3) U.S. Pat. No. 6,032,214 ("the '214 Patent"); and (4) U.S. Pat. No. 6,034,918 ("the '918 Patent").  Rambus asserted counterclaims against Samsung, alleging infringement of the '263 and the '918 patents.

### A.    Rambus v. Infineon Litigation

Rambus develops and licenses technology to companies that manufacture semi-conductor memory devices.  Its patents are directed to various dynamic random access memory devices ("DRAMs"), Rambus DRAMs ("RDRAMs"), Synchronous Dynamic Random Access Memory ("SDRAM"), and Double Data Rate Synchronous Dynamic Random Access Memory ("DDR-SDRAM").  See Rambus, Inc. v. Infineon Tech. AG, 164 F.Supp.2d 743, 747-748 (E.D. Va. 2001).  Beginning in early 1998 and continuing through 1999 and 2000, Rambus developed, refined, and implemented a patent licensing and litigation strategy, which was aimed at several specifically identified DRAM manufacturers. Among the targeted DRAM manufacturers were Infineon, Samsung, and Hynix Semiconductor, Inc. ("Hynix").

Pursuant to that strategy, in June 2000, Rambus asserted, in this Court, patent infringement claims against Infineon with respect to the same four patents-in-suit that were at issue in

Samsung's action for declaratory judgment. After extensive discovery and issuance of a claim construction opinion, there was a two week trial on Rambus' infringement claims, as well as Infineon's counterclaims. Ultimately, the judgment was appealed to the United States Court of Appeals for the Federal Circuit, which affirmed in part, reversed in part, and remanded for further proceedings. Additional discovery was conducted at that time and, during those proceedings, it was determined that spoliation of documents by Rambus warranted the piercing of Rambus' attorney-client privilege and work product protection. See Rambus, Inc. v. Infineon Tech. AG, 222 F.R.D. at 296-99. Subsequent discovery was permitted on the issue of spoliation and other issues.

In February 2005, a bench trial was held on Infineon's defense of unclean hands, which was based on Rambus' alleged spoliation of evidence and other litigation misconduct. Simultaneously, a corollary evidentiary proceeding was held with respect to spoliation of evidence, for which a sanction of dismissal was requested. At the conclusion of the trial of those issues, the Court ruled from the bench that Infineon had proven, by clear and convincing evidence, that Rambus was liable for unclean hands, thus barring Rambus from enforcing the four patents-in-suit. Additionally, the Court ruled that Infineon had proven, by clear and convincing evidence, that Rambus had spoliated evidence, for which dismissal was the appropriate sanction. Following that

3

ruling, and before the Court issued findings of fact and conclusions of law, Rambus and Infineon settled the case.

### B.    Background And Procedural History Of This Action

Also pursuant to its licensing and litigation strategy, and while Rambus was prosecuting its actions against Infineon, Rambus entered license negotiations with Samsung.  In October 2000, the parties entered into a license agreement that covered, _inter alia_, the patents-in-suit in Samsung's action for declaratory judgment. See _Samsung Electronics Co., Ltd. v. Rambus Inc._, 386 F.Supp.2d 708, 712 (E.D. Va. 2005).  Samsung and Rambus amended that license agreement in 2001 because of developments in the litigation between Rambus and Infineon.  See _id._

Samsung and Rambus began to renegotiate the terms of the license agreement in July 2004.  As part of those negotiations, the parties discussed a so-called "Standstill Agreement" by which any litigation over the license agreement would be delayed for a year while negotiation continued.  However, the negotiations did not go to the liking of Rambus.  On June 6, 2005, when Samsung refused to accede to Rambus' demand for a contract provision that would allow Rambus to file litigation first, in the venue of its choice, Rambus terminated the discussions respecting an extension of the license agreement and the license agreement itself.  Simultaneously, Rambus filed a patent infringement action against Samsung in the United States District Court for the Northern District of California.  See

4

id., at 713-15.  In that action, Rambus claimed that Samsung was infringing, inter alia, the '263 and the '918 patents that were at issue in Rambus v. Infineon and in this action.

On June 7, 2005, one day after Rambus brought patent infringement claims against Samsung in the Northern District of California, Samsung filed this action for declaratory judgment, and filed its First Amended Complaint shortly thereafter.  See id. at 712.  Samsung's complaint and the amended complaint proceeded on the clearly articulated theory that the decision on the spoliation and unclean hands issues in Rambus v. Infineon barred any claim for infringement of the patents-in-suit.  On July 12, 2005, Rambus counterclaimed alleging infringement of the '263 and '918 patents.

Pursuant to 28 U.S.C. § 1404(a), Rambus also moved to transfer this action to the Northern District of California so that Rambus could press the infringement claims in its chosen venue.  At an evidentiary hearing on that motion, it was established that the General Counsel of Rambus had been directed by the company's management to avoid litigation in this district and to assure that Rambus controlled the selection of forum for any litigation between Samsung and Rambus.  Samsung Electronics Co., Ltd. v. Rambus Inc., 836 F. Supp.2d 703, 713 (E.D. Va. 2005).  Indeed, it was for that reason that Rambus terminated the license renegotiation with Samsung and precipitously sued Samsung in the Northern District of California.  Samsung Electronics, 386 F. Supp.2d at 713, 723.

On August 5, 2006, Samsung moved for partial summary judgment on the issues of spoliation and unclean hands.  Samsung argued that the Court's bench ruling in Rambus v. Infineon with respect to Rambus' spoliation and unclean hands should be given collateral estoppel effect and consequently that the four patents-in-suit were unenforceable.  A briefing schedule was set for Samsung's motion for partial summary judgment, and argument was set for September 21, 2005.

### C.   Covenants Not To Sue

On September 6, 2005, six days before responding to Samsung's motion for partial summary judgment, Rambus filed an "unconditional" and "irrevocable" covenant not to assert patent infringement claims against Samsung with respect to the '804 and '214 patents ("First Covenant").  The First Covenant expressly extended to actions in the International Trade Commission as well. The scope of the First Covenant extended to "any and all methods, processes, and products made, used, offered for sale, sold, or imported by Samsung currently or at any time prior to the date of this covenant."  However, the First Covenant did not extend to any other patents held by Rambus, related or unrelated, and Rambus expressly declined to concede the merits of Samsung's allegation that the '804 and '214 patents were unenforceable and invalid.

On September 12, 2005, Rambus filed its opposition to Samsung's motion for partial summary judgment on the theory of

6

unclean hands based on spoliation.  On September 13, 2005, Rambus and Samsung stipulated that the First Covenant "eliminates any need for declaratory relief that Samsung may have had with respect to the '804 Patent and the '214 Patent."  Stipulation (Docket No. 42). Samsung, however, reserved its right to request that the Court declare the case exceptional and order Rambus to pay Samsung's attorney's fees under 35 U.S.C. § 285.  Rambus expressly reserved the right to oppose such relief, and to argue that the First Covenant moots such relief.  The stipulation also provided that Samsung's declaratory judgment action with respect to the '804 and '214 patents was to be dismissed without prejudice.

On September 14, 2005, Rambus' motion to transfer this action to the Northern District of California was denied.  On the same date, counsel were ordered to confer about procedures to expedite the trial of this action and to report the results thereof to the Court on September 21, 2005.  On September 20, 2005, Samsung filed its reply brief on its motion for partial summary judgment.

On September 21, 2005, the Court gave notice of its intent to take judicial notice of the record of the spoliation and unclean hands bench trial in Rambus v. Infineon.  The hearing on Samsung's motion for partial summary judgment was rescheduled to September 28, 2005.

Also, on September 21, 2005, Mr. John Danforth, Rambus' General Counsel, signed a second covenant not to sue Samsung

("Second Covenant"), this time with respect to the '263 and '918 patents.  The Second Covenant was filed with the Court on September 22, 2005.  The language in the Second Covenant with respect to the covenant not to sue is identical to the language in the First Covenant.  Rambus used the Second Covenant as a vehicle to withdraw its counterclaims in this action as well as its claims against Samsung in the Northern District of California, <u>Rambus Inc. v. Samsung Electronics Co., Ltd., et al.</u>, Case No. C-05-02298-RMW (N.D. Cal.), which asserted infringement of the '263 and '918 patents.  Rambus' counterclaims in this action were dismissed with prejudice by Order entered on September 28, 2005.

On September 28, 2005, the parties argued Samsung's motion for partial summary judgment.  The motion was then submitted for decision.

Contemporaneous with the filing of the Second Covenant, on September 21, 2005, Rambus filed its motion to dismiss Samsung's declaratory judgment action for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  Rambus contended that the First and Second Covenants ("Rambus Covenants") moot any case or controversy, thereby depriving the Court of subject matter jurisdiction, including jurisdiction to rule on Samsung's request for attorney's fees.

Notwithstanding its argument on the latter point, on October 3, 2005, Rambus made a written offer to Samsung to pay reasonable

8

attorney's fees incurred by Samsung in this action.   In Rambus' view, that offer along with the Rambus Covenants "afford[ed] Samsung all of the relief to which it may otherwise be entitled in this action and therefore moots any further proceedings on the merits of any of Samsung's claims, including its allegations that this action qualifies as an exceptional case entitling Samsung to recover its reasonable attorney's fees."[1]   However, in making its settlement offer, Rambus expressly declined to concede the merits of Samsung's allegations.   Samsung argued that the Court retained jurisdiction not only to decide whether Samsung was entitled to attorney's fees under 35 U.S.C. § 285 and the Court's inherent power, but also to issue declaratory relief by ruling on Samsung's motion for partial summary judgment.

On November 8, 2005, the declaratory judgment action was dismissed without prejudice as moot.   The motion to dismiss Samsung's claim for attorney's fees was denied.   See Samsung Elec. Co. v. Rambus Inc., 398 F.Supp.2d 470 (E.D. Va. 2005).   With respect to Samsung's claim for attorney's fees, the Court then set a schedule for submission of the Rambus v. Infineon record, for briefing the issue of attorney's fees, and for submission of proposed findings of fact and conclusions of law on the issue of exceptionality.   A hearing was set for December 15, 2005.

---

[1] Reply In Support of Motion by Defendant Rambus Inc. To Dismiss Action (Docket No. 73), Ex. A (October 3, 2005 letter from Gregory Stone to David Healey).

9

### D.   Offer of Judgment

On November 29, 2005, Rambus made an offer of judgment to Samsung under Fed. R. Civ. P. 68 for the amount of Samsung's attorney's fees of $476,542.30, plus the full amount of any reasonable additional attorney's fees and costs incurred by Samsung in connection with this action after Samsung's November 22, 2005 filing, in which Samsung had specified the amount of attorney's fees it had incurred as of that date.  Rambus argues that its offer of judgment with respect to attorney's fees moots the Court's jurisdiction to decide to impose sanctions under 35 U.S.C. § 285 and the Court's inherent power.

For the reasons set forth in the accompanying Memorandum Opinion (Docket No. 133), the Court finds that Rambus' offer of judgment has not divested the Court of jurisdiction to determine whether sanctions are appropriate in this case.  Thus, the Court must decide whether Samsung is a prevailing party on the facts of this case.

### DISCUSSION

Absent statutory authority to the contrary, "[i]n the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser."  <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. 240, 247 (1975).  Among the statutory exceptions to what is commonly known as the "American Rule" is 35 U.S.C. § 285, which provides that, in

10

patent cases, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."

Samsung contends that "[t]he Court's dismissal of Rambus's counterclaims with prejudice, together with Rambus's covenants-not-to-sue on the patents at issue in this case, made Samsung a prevailing party in relation to the counterclaims."[2]   Rambus contends that the dismissal with prejudice and the covenants not to sue do not make Samsung a prevailing party.

## I.   Prevailing Party Requirement

The Supreme Court's decision in <u>Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Human Res.</u>, 532 U.S. 598 (2001) supplies the principles that control interpretations of statutes using the term "prevailing party."   In <u>Buckhannon</u>, the Supreme Court addressed whether the term "prevailing party," a legal term of art employed in numerous federal statutes, includes "a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct."   <u>Id.</u> at 600.   The petitioners in <u>Buckhannon</u> contended that they were entitled to attorney's fees under the so-called "catalyst theory," which states that a

---

[2] Samsung's Memorandum in Support of Motion for Finding That Samsung is a Prevailing Party and the Award of Reasonable Attorney's Fees (Docket No. 88), page 1.

plaintiff is a "prevailing party," even absent any relief on the merits, if the plaintiff achieves the desired result because the lawsuit precipitated a voluntary change in the defendant's conduct.

Buckhannon Board and Care Home, Inc. ("Buckhannon"), which operated assisted living facilities for the elderly in West Virginia, had failed an inspection by West Virginia's fire marshal because some of its residents were deemed incapable of "self-preservation." Under West Virginia law, all residents in assisted living facilities had to be capable of self-preservation. In other words, the residents had to be capable of removing themselves from situations involving imminent danger, such as a fire. After Buckhannon received a cease and desist letter which required closure of its facilities within 30 days, Buckhannon filed suit on behalf of itself and other assisted living facilities against the State of West Virginia, seeking declaratory and injunctive relief under the Fair Housing Amendments Act (FHAA) and the Americans with Disabilities Act (ADA). Shortly thereafter, in 1998, West Virginia passed legislation eliminating the self-preservation requirement. The State then filed a motion to dismiss the action as moot, which the district court granted. The district court denied the petitioners' motion for attorney's fees under the catalyst theory, in accordance with Fourth Circuit law.[3]

---

[3] While the "catalyst theory" had been accepted in most circuits, the Fourth Circuit had rejected it in <u>S-1 and S-2 v. State Bd. of Education of North Carolina</u>, 21 F.3d 49 (4th Cir.

As the Supreme Court noted, Black's Law Dictionary defines a prevailing party as "[a] party <u>in whose favor a judgment is rendered</u>, regardless of the amount of damages awarded." Black's Law Dictionary (8th ed. 2004) (emphasis added). <u>See</u> <u>Buckhannon</u>, 532 U.S. at 603. "[R]espect for ordinary language requires that <u>a plaintiff receive at least some relief on the merits of his claim</u> before he can be said to prevail." <u>Id.</u> (quoting <u>Hewitt v. Helms</u>, 482 U.S. 755, 760 (1987)) (emphasis added). The Court also held that "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees," because they are "a court-ordered change in the legal relationship between the plaintiff and the defendant." <u>Id.</u> at 604 (quoting <u>Texas State Teachers Assn. v. Garland Independent School Dist.</u>, 489 U.S. 782, 792 (1989)). By contrast, "[p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees." <u>Id.</u> n.7. With those conclusions as background, the Supreme Court explained that its previous decisions had established that "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." <u>Id.</u>

However, where a defendant voluntarily changes his conduct, "there is no judicially sanctioned change in the legal relationship

---

1994)(en banc).

of the parties." Id. at 605.  "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change."  Id.   The Buckhannon Court rejected an interpretation of the term "prevailing party" that would authorize "federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the 'sought-after destination' without obtaining any judicial relief." Id. at 606.

The Supreme Court also has held that "fee-shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike." Independent Federation of Flight Attendants v. Zipes, 491 U.S. 754, 758 n.2 (1989).  Thus, it is generally accepted that the Supreme Court's rejection of the catalyst theory and its interpretation of "prevailing party" as a legal term of art should be consistently applied when interpreting all statutes awarding fees to prevailing parties.  See, e.g., Goldstein v. Moatz, 445 F.3d 747, 751 (4th Cir. 2006); Smith v. Fitchburg Public Schools, 401 F.3d 16, 22 n.8 (1st Cir. 2005); Alegria v. District of Columbia, 391 F.3d 262, 264 (D.C. Cir. 2004).  The Supreme Court tacitly concluded as much in Buckhannon.  See Buckhannon, 532 U.S. at 603 n.4.  The Federal Circuit has applied the Buckhannon

analysis to the prevailing party requirement in 35 U.S.C. § 285.[4]
See Inland Steel Co. v. LTV Steel Co., 364 F.3d 1318, 1320 (Fed.
Cir. 2004). See also Brickwood Contractors, Inc. v. United States,
288 F.3d 1371, 1379 (Fed. Cir. 2002)(extending Buckhannon to the
Equal Access to Justice Act).

Following Buckhannon, the Federal Circuit has held that a
party seeking attorney's fees as a prevailing party in a government
contract case must first demonstrate that "it obtained an
enforceable judgment on the merits or a court-ordered consent
decree that materially altered the legal relationship between the
parties, or the equivalent of either of those." Rice Services,
Ltd. v. United States, 405 F.3d 1017, 1025 (Fed. Cir. 2005)
(collecting cases for proposition that prevailing party not
strictly limited to judgments on the merits and consent decrees).
In so holding, the Federal Circuit joined a majority of the
circuits in concluding that "judicial action other than a judgment
on the merits or a consent decree can support an award of
attorney's fees, so long as such action carries with it sufficient

---

[4]Federal Circuit law applies "with respect to issues of
substantive patent law and certain procedural issues pertaining to
patent law," whereas the law of the regional circuits applies with
respect to non-patent issues. Invitrogen Corp. v. Biocrest Mfg.,
LP, 424 F.3d 1374, 1378-1379 (Fed. Cir. 2005). Consequently,
Federal Circuit law "governs the substantive interpretation of 35
U.S.C. § 285, which is unique to patent law." Pharmacia & Upjohn
Co. v. Mylan Pharmaceuticals, Inc., 182 F.3d 1356, 1359 (Fed. Cir.
1999)(rejecting district court's application of Fourth Circuit
standard in interpreting exceptional case requirement under 35
U.S.C. § 285, and applying Federal Circuit law instead).

judicial imprimatur."[5]  Roberson v. Giuliani, 346 F.3d 75, 81 (2nd Cir. 2003)(collecting cases).   This general construction of Buckhannon is appropriate, considering that Buckhannon identified judgments on the merits and consent decrees as "examples" of the type of court-ordered relief that confers prevailing party status. Buckhannon did not pronounce that only judgments and consent decrees can bestow prevailing party status.  See Buckhannon, 532 U.S. at 605 ("We think, however, the 'catalyst theory' falls on the other side of the line from these examples.").   The threshold requirement for prevailing party status is "a court order carrying sufficient 'judicial imprimatur' to materially change the legal relationship of the parties."  Rice Services, 405 F.3d at 1026.

The foregoing principles inform the assessment of Samsung's contention that the dismissal of Rambus' counterclaims with prejudice following, and in perspective of, the issuance by Rambus of the covenants not to sue is sufficient to confer prevailing party status on Samsung.

### 1.   The Dismissal Of The Counterclaims

The Second Covenant, signed on September 21, 2005, addressed the '263 and the '918 patents, which were the subject of Rambus'

---

[5]The Eighth Circuit's decision in Christina A. v. Bloomberg, 315 F.3d 990, 993 (8th Cir. 2003) has been identified as the sole outlier.  In fact, however, the Eighth Circuit has declared that the detractors of Christina A. have "misread that decision as limiting prevailing party status under Buckhannon to those who obtain consent decrees and judgments on the merits."  See Northern Cheyenne Tribe v. Jackson, 433 F.3d 1083, 1085 n.2 (8th Cir. 2006).

counterclaims.   The final paragraph of the covenant not to sue stated that, in light of the covenant, Rambus would withdraw its counterclaims in this case as well as its other claims with respect to the '263 and '918 patents, which were then pending in the Northern District of California.   Rambus stated that it would file stipulated dismissals of those counterclaims and claims, or, if Samsung would not so stipulate, it would move to dismiss them.

On September 28, 2005, before hearing oral argument on the motion for partial summary judgment, the Court inquired as to whether the parties agreed that the claims and counterclaims should be dismissed.   With respect to the counterclaims, the exchange proceeded as follows:

> THE COURT: All right.  Have you all talked about dismissing them and do you agree that there is no jurisdiction?  I have set briefing on that because I got it.  I also think there is a separate order setting briefing on the judicial notice issue.    Then I got the covenant not to sue, and I set briefing on that.   But if you-all are all in agreement that there is no case or controversy, I see no need to proceed.  If there's disagreement over whether there's a case or controversy, and, therefore, the Court has jurisdiction, then, of course, I have jurisdiction to determine jurisdiction and will do so in accord with the schedule I have set.
>     It seems to me, Mr. Healey, the first question is whether you agree that the counterclaims ought to be dismissed.  Do you agree with that?  Do you stipulate to that or --
>
> MR. HEALEY: Your Honor, we would agree that Rambus's counterclaims against Samsung should be dismissed.

17

THE COURT: All right.

MR. HEALEY: We disagree --

THE COURT: How do you believe they ought to be dismissed?

MR. HEALEY: We believe that Rambus's counterclaims against Samsung should be dismissed with prejudice, Your Honor.

THE COURT: Do you agree to dismissal with prejudice, Mr. Stone?

MR. STONE: The effect, Your Honor, in our view, of the covenant not to sue that we filed is that our counterclaim should be dismissed with prejudice.

THE COURT: Well, is there any need for me to wait to dismiss the counterclaims until I have briefing on the jurisdictional issue[6] or can I go on and do it now?  It's not conditional, it didn't look to me like.

MR. STONE: There's not reason for Your Honor to delay.

MR. HEALEY: You can do it now, Your Honor.

THE COURT: All right.

MR. HEALEY: There's no reason to delay.

THE COURT: So everybody is in agreement that the counterclaims of Rambus filed in this action should be dismissed with prejudice?

MR. HEALEY: Yes, sir.

THE COURT: All right.

---

[6]Briefing on the jurisdictional issue was to be directed to subject matter jurisdiction over Samsung's declaratory judgment action.

18

> MR. STONE: Yes, Your Honor.
>
> THE COURT: An order will be entered and they are dismissed with prejudice.  That still leaves us with the declaratory judgment action.

Summary Judgment Tr., 4-6, September 28, 2005.

Therefore, the record shows that although Rambus had stated its position that the counterclaims were moot, that was not the basis for the order dismissing the counterclaims.  Indeed, at that point, the Court had not delved into the jurisdictional quagmire created by the covenants not to sue.  Moreover, the covenants not to sue mooted Samsung's action for declaratory judgment, not Rambus' counterclaims.  The covenants not to sue extinguished the case or controversy with respect to a declaratory judgment of non-infringement and unenforceability, but not with respect to Rambus' infringement claim.  If Rambus breached the covenant not to sue by asserting an infringement claim against Samsung on the '263 or '918 patents, its suit would not fail for lack of jurisdiction.  Whether the covenant not to sue could be pleaded as an affirmative defense, in addition to forming the basis for a breach of contract action, would have to be litigated, see Adams v. Cavanagh Communities Corp., 669 F.Supp. 870, 875-876 (N.D. Ill. 1987), but there is no authority for the proposition that a covenant not to sue stands as a jurisdictional bar to bringing a subsequent infringement claim.[7]

---

[7] Rambus has attempted to read a contrary holding into the Federal Circuit's decision in Intellectual Property Development,

The next question then is whether the dismissal with prejudice constituted a stipulated dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(ii).[8]  At the foot of the covenant not to sue on the '263 and the '918 patents, Rambus indicated that this would be its preferred course of action in effectuating the dismissal of the counterclaims, and Rambus argues that the effect of its in-court statements on September 28, 2005 was a stipulated dismissal.

---

Inc. v. TCI Cablevision of California, Inc., 248 F.3d 1333, 1342 (Fed. Cir. 2001).  The Federal Circuit's opinion hardly addresses the infringement claim, but rather focuses on the justiciability of the declaratory judgment counterclaim just as it did in Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1057 (Fed. Cir. 1995).  While the court stated that the "case" turned on the effect of the covenant not to sue rather than the Rule 41(a) dismissal, that statement cannot be extended to the infringement claim. Indeed, the notion that the Federal Circuit  held that a covenant not to sue moots an infringement claim is belied by the fact that the court affirmed the dismissal of that claim *with prejudice*, just as Rambus' counterclaims were dismissed with prejudice.  A dismissal for lack of jurisdiction is not a determination on the merits and thus is typically without prejudice.

Much of Rambus' argument that Samsung is not a prevailing party relies on its assertion that the counterclaims were dismissed for lack of jurisdiction.  Rambus correctly states that a court order dismissing an action for lack of jurisdiction is not an adjudication of the merits, nor is it analogous to a consent decree.  See Rice Services, 405 F.3d at 1026.  Indeed, if an action is moot, the court has no power to rule on the merits and the dismissal order recognizing mootness cannot materially alter the parties' legal relationship, thereby conferring prevailing party status.  See id. at 1027 n.6.  However, Rambus' counterclaims were not dismissed for lack of jurisdiction, nor did the covenants not to sue moot Rambus' counterclaims.  Consequently, Rice Services is not controlling authority.

[8] Voluntary dismissal under Rule 41(a)(1)(i) was foreclosed on August 2, 2005, when Samsung filed its answer to Rambus' counterclaims.

20

However, while Rambus and Samsung agreed at the September 28, 2005 hearing that Rambus' counterclaims should be dismissed with prejudice, the parties did not stipulate to dismissal as required by Rule 41(a)(1)(ii).

Rule 41(a)(1)(ii) states that an action may be dismissed by the plaintiff without order of court "by filing a stipulation of dismissal signed by all the parties who have appeared in the action."[9]   Here, the parties clearly agreed that Rambus' counterclaims should be dismissed with prejudice, and did so on the record, but they did not file a signed stipulation as envisioned by Rule 41(a)(1)(ii).

Several courts have held that "a voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record is enforceable even if the agreement is never reduced to writing, signed, or filed, as contemplated by Fed. R. Civ. P. 41(a)." Role v. Eureka Lodge No. 434, I.A. of M & A.W. AFL-CIO, 402 F.3d 314, 318 (2nd Cir. 2005). See also Oswalt v. Scripto, Inc., 616 F.2d 191, 195 (5th Cir. 1980)(noting and reaffirming its prior approval of "a district court's finding that an oral dismissal of claims against defendants in the course of a trial was sufficient to constitute a dismissal

---

[9] "The provisions of this rule apply to the dismissal of any counterclaim, cross-claim, or third party claim." Fed. R. Civ. P. 41(c).  Thus, the fact that Rambus sought to voluntarily dismiss counterclaims is of no significance to the required analysis.

21

under Rule 41(a)(1) even though there was no formal dismissal or stipulation filed with the clerk."); Carter v. Beverly Hills Sav. & Loan Ass'n, 884 F.2d 1186, 1191 (9th Cir. 1989)("The requirements of this subsection may be met either by filing a written stipulation or by making an oral stipulation in open court."); Pipeliners Local Union No. 798, Tulsa, Okl. v. Ellerd, 503 F.2d 1193, 1199-1200 (10th Cir. 1974); Maxus Energy Corp. and Subsidiaries v. United States, 31 F.3d 1135, 1146 n.3 (Fed. Cir. 1994); Boran v. United Migrant Opportunity Services, Inc., 99 Fed.Appx. 64, 66-67 (7th Cir. 2004).  The Fourth Circuit took note of this line of cases in Camacho v. Mancuso, 53 F.3d 48, 51 (4th Cir. 1995), but it has never held that an oral stipulation in open court can form the basis for a stipulated dismissal pursuant to Rule 41(a)(1)(ii), in lieu of the stated formalities.[10]

In Camacho, the Fourth Circuit noted that, if it were to take a "purely mechanistic approach" to interpreting Rule 41, its inquiry would end with the fact that the plaintiff in that case had not signed and filed a stipulation of dismissal, as the language of Rule 41(a)(1)(ii) plainly requires.  Id.  The court noted that "[n]otwithstanding the appeal of a bright-line test, a number of courts have rejected such a rigid approach to interpreting the rules," and "have liberally interpreted Rule 41(a)(1)(ii) to hold

---

[10]  Regional circuit law governs the effect of an oral stipulation in open court, and whether it satisfies the requirements of Rule 41(a)(1)(ii).

that, in the absence of a written stipulation signed by the parties and filed with the court, an oral stipulation *before the court* is sufficient to meet the requirements of Rule 41(a)(1)(ii)."   Id. "The idea behind these decisions, of course, is that when a stipulation is made to the court, the presiding judge has the opportunity to ensure that both parties agreed to the dismissal as per the intent of Rule 41(a)(1)(ii)."   Id.

The defendants in Camacho urged the Fourth Circuit to interpret Rule 41(a)(1)(ii) even more liberally than the courts sanctioning oral stipulations.  In Camacho, the parties had agreed to dismiss the case in a telephone conversation, but only the plaintiffs' counsel signed the notice of dismissal.  Consequently, the district court held that the stipulated dismissal was ineffective and agreed to reopen the case upon the plaintiffs' motion.  The Fourth Circuit found that, while giving effect to the notice of dismissal in that case would not have frustrated the parties' original intent, it nonetheless would have compromised in future cases "the interests that Rule 41's procedural hurdles safeguard: the defendant's interest in the cause of action and the court's interest in judicial efficiency."   Id.  Specifically, the Fourth Circuit noted that Rule 41(a)(1)(ii) might become a vehicle for unilateral dismissals, in direct conflict with the express intent of Rule 41(a)(1)(i).  Additionally, the entry of dismissal on the docket aids in the application of the doctrine of res

23

judicata and allows district courts to track the size and status of their dockets.  <u>See</u> <u>id.</u> at 52.  Consequently, the Fourth Circuit held that "Rule 41(a)(1)(ii) requires tangible confirmation of the parties' agreement to dismiss."  <u>Id.</u>

The question then is whether the required tangible confirmation is a signed and filed stipulation, as the face of the rule requires, or whether an oral stipulation in open court will suffice.  The Fourth Circuit declined to offer dictum in <u>Camacho</u>, and the language in <u>Camacho</u> is alternately skeptical of and receptive to such an approach.

As the Fourth Circuit has held, "the Federal Rules of Civil Procedure indicate a policy to disregard technicalities and form and to determine the rights of litigants on the merits.  To that end these rules are to be liberally construed."  <u>Holley Coal Co. v. Globe Indemnity Co.</u>, 186 F.2d 291, 295 (1950). <u>See also</u>  Fed. R. Civ. P. 1 (stating that the Rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action.").  However, the Federal Rules of Civil Procedure have the force and effect of law, and the Supreme Court has made clear that district courts are bound by the canons of statutory construction in interpreting them.  <u>See</u> <u>Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.</u>, 498 U.S. 533, 540 (1991).  Consequently, the Rules must be given their plain meaning, and the "inquiry is complete if [the Court] find[s]

24

the text of the Rule to be clear and unambiguous." See id. at 540-541. See also Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120, 123 (1989); Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 331 (4th Cir. 2006). Thus, courts must achieve a delicate balance between a liberal construction of the Rules and fidelity to the plain meaning of the Rules. A guiding principle rather uniformly applied by the Supreme Court is that "[t]he Federal Rules of Civil Procedure should be liberally construed, but they should not be expanded by disregarding plainly expressed limitations." Schlagenhauf v. Holder, 379 U.S. 104, 121 (1964).

It is indisputable that Rule 41(a)(1)(ii) clearly and unambiguously requires that a stipulated dismissal must be signed and filed with the court. This is the plain meaning of the unambiguous text of Rule 41(a)(1)(ii), and thus the inquiry ends there. Rather than being "purely mechanistic," this application of settled precepts of construction simply gives the plain meaning of Rule 41(a)(1)(ii) its stated effect. The plain meaning of Rule 41(a)(1)(ii) forecloses the liberal construction adopted by a number of courts, in allowing dismissals based on oral stipulations in open court. See Negron v. City of Miami Beach, Florida, 113 F.3d 1563, 1571 (11th Cir. 1997) (rejecting argument that oral stipulation in open court would be sufficient for dismissal under Rule 41(a)(1)(ii), and affirming dismissal pursuant to Rule 41(a)(2)). But see In re Furlong, 885 F.2d 815, 818 (11th Cir.

25

1989)(Eleventh Circuit held that, if parties had represented to the court that the case had been settled, the "spirit" of Rule 41(a)(1)(ii) would have been satisfied).

Moreover, allowing dismissals based on oral stipulations in open court would present concerns similar to those that occupied the Fourth Circuit's attention in <u>Camacho</u>: the defendant's interest in the cause of action and the court's interest in judicial efficiency.  While the courts allowing oral stipulations in open court recite that these stipulations must be clear, explicit, and unqualified, history certainly teaches that two parties can attach widely divergent significance to in-court statements.  While the statements would be on the record, in situations like this one, courts would be placed in the position of having to interpret a party's intent after the fact and could even be embroiled as a witness in the ascertainment of their intent.  The likelihood of disputes over the effect of in-court statements is amplified by the fact that Rule 41(a)(1)(ii) dismissals do not require a court order.  As a result, there is no official confirmation for the parties as to whether their in-court statements resulted in the dismissal of the action.  Likewise, while courts would be on notice that the parties may have stipulated to dismissal, the status of cases on their docket would necessarily remain uncertain.  The concerns at issue with respect to oral stipulations are identical to the concerns animating statutes of frauds.  Indeed, the

26

formalities exist for a reason.  As the Fourth Circuit noted, "the requirement that a stipulation be filed in court 'is not merely a technicality.'"  <u>Camacho</u>, 53 F.3d at 51 (quoting <u>McCall-Bey v. Franzen</u>, 777 F.2d 1178, 1185 (7th Cir. 1985)).

Consequently, the Court must give Rule 41(a)(1)(ii) its plain meaning, and the plain meaning of Rule 41(a)(1)(ii) clearly requires that a stipulation of dismissal under the rule must be signed by all the parties and filed with the court.  An oral stipulation in open court is neither an adequate replacement for a signed and filed stipulation, nor is it permitted by a faithful reading of the rule.  The parties easily could have signed and filed a stipulated dismissal, which is hardly an arduous task, but chose not to do so.  Thus, the statements by Rambus and Samsung on September 28, 2005, in agreeing that the counterclaims should be dismissed with prejudice, did not constitute a stipulated dismissal under Rule 41(a)(1)(ii).

Rambus indicated in its covenant not to sue that, if Samsung would not stipulate to dismissal, it would move for dismissal.  The alternative to a voluntary dismissal without court order under Rule 41(a)(1) is a voluntary dismissal by virtue of court order under Rule 41(a)(2):

> Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance <u>save upon order of the court and upon such terms and conditions as the court deems proper</u>....
> Unless otherwise specified in the order, a

27

> dismissal under this paragraph is without
> prejudice.

While Rule 41(a)(2) clearly requires a court order, the face of the rule mandates no further formalities.  Rambus provided notice of its intent to seek dismissal of its counterclaims in the covenant not to sue, and then requested it orally in open court.  As a matter of practice, a request for a voluntary dismissal under Rule 41(a)(2) is to be the subject of a formal motion.  And, oral motions on the record are appropriate when presented during a hearing or at trial.  See 8 Moore's Federal Practice § 41.40(a) (Matthew Bender 3ed. 2006); Kenrose Mfg. v. Fred Whitaker Co., 53 F.R.D. 491, 493-495 (W.D. Va. 1971), aff'd, 512 F.2d 890 (4th Cir. 1992).  Rambus made its request for dismissal orally in open court, and the Court granted the request after confirming Samsung's agreement to the dismissal, upon the condition that it was with prejudice.  The Court effectuated the voluntary dismissal by court order, as required by Rule 41(a)(2).  Thus, Rambus' counterclaims were voluntarily dismissed under Rule 41(a)(2), and will be treated as such for purposes of the prevailing party analysis.

## 2.  Rule 41(a)(2) Dismissals

The dispositive question then is whether the voluntary dismissal under Rule 41(a)(2) had sufficient judicial imprimatur for a material change in the legal relationship between the parties to confer prevailing party status on Samsung.

"The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced.  To fulfill this purpose, Rule 41(a)(2) requires a court order as a prerequisite to dismissal and permits the district court to impose conditions on voluntary dismissal to obviate any prejudice to the defendants which may otherwise result from dismissal without prejudice."  Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987) (omitting internal citations).  The decision whether to grant a dismissal under Rule 41(a)(2) is committed to the discretion of the district court, as are the necessary terms and conditions. Further, "[i]n considering a motion for voluntary dismissal, the district court must focus primarily on protecting the interests of the defendant."  Id.

A voluntary dismissal with prejudice operates as an adjudication on the merits of the case.  Fed. R. Civ. P. 41(a).  In Semtek Intern. Inc. v. Lockheed Martin Corp., 531 U.S. 497, 506 (2001), the Supreme Court held that a dismissal with prejudice under Rule 41(a) bars the refiling in the same court of the action that is dismissed with prejudice.  The Court also held that a dismissal with prejudice under Rule 41 is not a judgment on the merits of the sort that is entitled to claim preclusive effect (a point that is not at issue here).  Thus, under Semtek, a dismissal with prejudice under Rule 41, while not a judgment on the merits for purposes of claim preclusion, effectuates a material alteration

in the legal relationship between the party which benefits from the prejudicial dismissal and the party which has its claim dismissed with prejudice.   In this case, the order dismissing Rambus' counterclaims with prejudice bars Rambus from asserting those claims ever again against Samsung in the Eastern District of Virginia.  And, to that extent, the dismissal is a judgment on the merits against Rambus and in favor of Samsung.  In any event, the dismissal certainly alters the legal relationship between Samsung and Rambus, notwithstanding that, under Semtek, the order is not entitled to preclusive effect elsewhere.

Moreover, the order dismissing Rambus' counterclaims with prejudice is analogous to a consent decree, a court order which undoubtedly carries sufficient judicial oversight in materially altering the parties' legal relationship.  For that additional reason, the order here confers prevailing party status on Samsung.

In Smyth v. Rivero, the Fourth Circuit examined the basis for the distinction in Buckhannon between consent decrees and purely private settlements.  The Court of Appeals began by noting the hybrid nature of consent decrees, which incorporate elements of both judgment and contract:

> a consent decree embodies an agreement of the parties and thus in some respects is contractual in nature. But it is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.

Smyth, 282 F.3d at 280 (quoting Rufo v. Inmates of the Suffolk County Jail, 502 U.S. 367, 378 (1992)).  Additionally, "[t]he parties to a consent decree expect and achieve a continuing basis of jurisdiction to enforce the terms of the resolution of their case in the court entering the order."  Id.  More importantly, however, "a court entering a consent decree must examine its terms to ensure they are fair and not unlawful."  Id. (citing United States v. Miami, 664 F.2d 435, 439-40 (5th Cir. 1981)(en banc) (concurring opinion of Rubin, J., joined by Brown, Anderson, Randall, and Thomas A. Clark, JJ.)).

Private settlements, in contrast, do not receive judicial approval.  "Nor is a private settlement agreement enforceable by a district court as an order of the court unless the obligation to comply with its terms is 'made part of the order of dismissal -- either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order.'"  Id. at 280-281 (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (1994)). "A consent decree, because it is entered as an order of the court, receives court approval and is subject to the oversight attendant to the court's authority to enforce its orders, characteristics not typical of settlement agreements."  Id. at 281.

A voluntary dismissal under Rule 41(a)(2) bears considerable similarity to a consent decree.  Unlike a stipulated dismissal, to

31

which the parties have an absolute right, a Rule 41(a)(2) dismissal is committed to the discretion of the district court.  In exercising that discretion, district courts can impose terms and conditions on the plaintiff in order to obviate any prejudice to the defendant.  Those terms and conditions materially alter the legal relationship between the parties in an effort to protect the defendant from prejudice as a result of the dismissal.  For example, the court can: (a) condition dismissal on the plaintiff's payment of costs; (b) impose a condition restricting the forum in which the plaintiff may refile the claim; (c) require the plaintiff to (or not to) use existing discovery in any refiled action; and (d) require the plaintiff to produce additional discovery.  See 8 Moore's Federal Practice § 41.40(10).  Of course, the ultimate condition that the court can impose on the voluntary dismissal is that the dismissal be with prejudice.[11]  See id.; Andes v. Versant

---

[11] Some courts have held that district courts lack discretion to deny a Rule 41(a)(2) dismissal when the plaintiff seeks dismissal with prejudice.  See Smoot v. Fox, 340 F.2d 301, 303 (6th Cir. 1964); Shepard v. Egan, 767 F.Supp. 1158, 1165 (D. Mass. 1990).  However, the better approach is that adopted by the Tenth Circuit, which has rejected such a blanket rule given that a dismissal with prejudice might still have an adverse effect on the defendant or other parties to the litigation.  See County of Sante Fe v. Public Services Co. of N.M., 311 F.3d 1031, 1049 (10th Cir. 2002).  Moreover, the Supreme Court stated in Semtek Int'l, Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505 (2002), that a dismissal with prejudice under Rule 41 generally has "the consequence of not barring the claim from other courts," but rather refiling in the district court that issued the dismissal with prejudice.  If a dismissal with prejudice under Rule 41 is not sufficient for claim preclusion, then there are myriad circumstances under which even a dismissal with prejudice would prejudice the defendant.

Corp., 788 F.2d 1033, 1037 (4th Cir. 1986) (noting that when court conditions dismissal on it being with prejudice, court must give plaintiff an opportunity to reject condition and proceed to judgment on merits).

A number of courts, both before and after the Supreme Court's decision in Buckhannon, have recognized that a voluntary dismissal under Rule 41(a)(2) can confer prevailing party status.[12]  In Bryant v. MV Transporation, Inc., 231 F.R.D. 480, 482 (E.D. Va. 2005), the court explained that:

> While a voluntary dismissal under Rule 41(a)(1)(ii) is effective with little to no court involvement, the court plays a significant role in resolving a case that is dismissed under Rule 41(a)(2).  A voluntary dismissal under Rule 41(a)(2) is not valid unless the parties obtain a court order.  The plaintiff must move the court, in writing, to dismiss the action.  The court has the discretion to approve or disapprove of the motion, and hence constitutes the determining

---

Consequently, the district court has discretion in determining whether to grant a Rule 41(a)(2) dismissal.

[12] Some of the decisions holding that a voluntary dismissal with prejudice confers prevailing party status have noted the res judicata defense among the reasons for reaching that conclusion. After the Supreme Court's holding in Semtek, there would seem to be considerable doubt as to whether a voluntary dismissal with prejudice can be imbued with claim preclusive effect outside the court that issues the dismissal order, though only a few courts appear to have noted the significance of the Supreme Court's dictum in Semtek.  However, Buckhannon focuses on whether or not the judicial order materially alters the legal relationship between the parties.  There can be no doubt that a dismissal with prejudice, in precluding a plaintiff from reasserting its claim in the court issuing the dismissal, materially alters the legal relationship between the parties.

> factor as to whether the case is dismissed.
> The court also has the authority to impose
> conditions on the moving party, thereby
> shaping the terms of the dismissal. . . .
> Thus, a Rule 41(a)(2) dismissal has the
> 'judicial imprimatur' and 'judicially
> sanctioned' relief lacking in a Rule
> 41(a)(1)(ii) dismissal.

See also Claiborne v. Wisdom, 414 F.3d 715, 719 (7th Cir. 2005) (holding that voluntary dismissal with prejudice effects a material alteration of the parties' legal relationship); Inland Steel, 364 at 1321 (holding that voluntary dismissal with prejudice after cancellation of patent-in-suit by Patent and Trademark Office bestowed prevailing party status); 10 Moore's Federal Practice § 54.171(3)(c)(iv).[13]

---

[13] Nevertheless, some courts have found that a voluntary dismissal with prejudice is insufficient to confer prevailing party status. See, e.g., Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers, 26 F.3d 842, 852 (8th cir. 1994). In Bridgeport Music, Inc. v. London Music, U.K., 345 F.Supp.2d 836, 838-839 (M.D. Tenn. 2004), the court rejected the reasoning employed by the court in United States v. Estate of Rogers, 2003 WL 21212749, *5 (E.D. Tenn. 2003), which held that a Rule 41(a)(2) dismissal was a judicially sanctioned material alteration in the legal relationship of the parties. The Bridgeport court stated that a Rule 41(a)(2) dismissal provides nothing more than the finality and res judicata bar to further litigation obtained as a result of a private settlement and stipulated dismissal, and thus that a voluntary dismissal was not sufficient to render a defendant a prevailing party. However, the Bridgeport court failed to account for the discretion and oversight exercised by the court in determining whether to grant the dismissal and under what terms and conditions.

In Dean v. Riser, 240 F.3d 505, 511 (5th Cir. 2001)(addressing prevailing party in context of 42 U.S.C. § 1988), the Fifth Circuit held that a defendant is not a prevailing party following voluntary dismissal unless the defendant can demonstrate that the plaintiff withdrew to avoid an unfavorable judgment on the merits. The

And, indeed, in Callaway Golf Co. v. Slazenger, 384 F.Supp.2d 735, 745-746 (D. Del. 2005), the district court addressed a prevailing party claim under 35 U.S.C. § 285 with a similar procedural history to that reflected in this case.  In Callaway, the plaintiff voluntarily dismissed its patent infringement claim and signed a covenant not to sue.  In return, the defendant agreed to dismiss its counterclaim for declaratory judgment without prejudice.  The court held that the plaintiff's voluntary dismissal of the patent infringement claim conferred prevailing party status on the defendant.[14]  See id. (citing Bioxy, Inc. V. Birko Corp., 935

_____

Federal Circuit took note of this authority in Inland Steel, though it did not expressly adopt it.  Regardless, the record in this case is more than sufficient to conclude that Rambus sought a voluntary dismissal in order to avoid an unfavorable judgment on the merits. Since the litigation between Rambus and Samsung began, Rambus has attempted every possible means to extract itself from the Eastern District of Virginia in order to avoid further adverse consequences from the unclean hands and spoliation ruling in Rambus v. Infineon. Indeed, the record reflects that the official policy of Rambus, as of June 2005, was to avoid litigation with Samsung in the Eastern District of Virginia.  See Samsung Electronics Co., Ltd. v. Rambus Inc., 386 F. Supp.2d 708, 713 (E.D. Va. 2005).

[14] Samsung has pointed to a number of post-Buckhannon cases, which hold that the dismissal of a claim with prejudice is a judgment on the merits and thereby confers prevailing party status on the defendant for purposes of awarding costs under Fed. R. Civ. P. 54(d).  See, e.g., Mother and Father v. Cassidy, 338 F.3d 704, 708 (7th Cir. 2003); Beer v. John Hancock Life Ins. Co., 211 F.R.D. 67, 70 (N.D.N.Y. 2002).  The standard for prevailing party under Rule 54(d) and under the fee-shifting statutes is generally the same when the question is considered by a court.  See Tunison v. Continental Airlines Corp., Inc., 162 F.3d 1187, 1189-1190 (D.C. Cir. 1998); Broccoli v. Echostar Communications Corp., 229 F.R.D. 506, 515 (D. Md. 2005).  See also 10 Moore's Federal Practice § 54.101(3)(noting that clerk of court will generally employ a simple judgment-winner test in assessing costs).  In fact, the Federal

F.Supp. 737, 744 (E.D.N.C. 1996)).  The procedural history and posture of this case are not materially different than in Callaway, and the decision in Callaway lends further support to the authorities which hold that a dismissal with prejudice under Rule 41(a)(2) places sufficient judicial imprimatur on a change in legal relationships to confer prevailing party status.

Samsung's agreement that Rambus' counterclaims should be dismissed with prejudice confirmed for the Court that the imposition of such a condition on the Rule 41(a)(2) dismissal was sufficient to protect Samsung's interests.  When courts exercise their discretion in granting Rule 41(a)(2) dismissals, and impose the term and condition of prejudice on that dismissal, this is the equivalent of a consent decree for prevailing defendants.[15]

---

Circuit follows its own law in determining prevailing party status under Rule 54(d), in the interest of "establishing a single definition of prevailing party in the context of patent litigation."  Manildra Milling Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178, 1182 (Fed. Cir. 1996).  However, it does not appear that the post-Buckhannon decisions (cited by Samsung and otherwise) assessing prevailing party status under Rule 54(d) have uniformly relied on the Supreme Court's guidance in Buckhannon. Consequently, the Court has not relied on these cases.

[15]A number of courts have concluded that a dismissal without prejudice is insufficient to make a defendant a prevailing party because the plaintiff can refile the complaint.  See, e.g., Szabo Food Service, Inc. v. Canteen Corp., 823 F.2d 1073, 1076-1077 (7th Cir. 1987).  However, these courts did not focus upon the nature of the terms and conditions that district courts can impose upon the dismissal of a complaint.  In many cases, conditions short of a dismissal with prejudice may be sufficient to confer prevailing party status.  The Court need not decide that question, however, as it is not presented in this case.

Otherwise, it would seem that a defendant could only become a prevailing party by proceeding to a judgment on the merits. A Rule 41(a)(2) dismissal is a court order that materially alters the legal relationship between the parties. It is only granted after the court exercises its discretion, and thus bears the necessary judicial imprimatur. The necessary conclusion then is that the voluntary dismissal with prejudice in this case made Samsung the prevailing party under 35 U.S.C. § 285.[16]

## II.   Inherent Power Sanctions

Because Samsung is a prevailing party, the Court must now determine whether this is an exceptional case in order to determine whether attorney's fees under 35 U.S.C. § 285 are appropriate. However, it should be noted that Samsung has also moved the Court to impose sanctions on Rambus under its inherent power. Courts may impose sanctions under their inherent power when a litigant has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. See Chambers v. NASCO, Inc., 501 U.S. 32 (1991). Even if the Court had found that Samsung was not a prevailing party, it would nevertheless be necessary to consider whether the spoliation of evidence alleged by Samsung qualified as bad faith litigation, thereby permitting inherent power sanctions.

---

[16] That is especially so where, as here, the dismissal with prejudice reinforces a covenant not to sue which itself has effectuated a change, albeit without court order, in the legal relationship between the parties.

The Supreme Court held in <u>Chambers</u> that, like Rule 11 sanctions, "the imposition of sanctions under the bad-faith exception depends not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation." <u>Id.</u> at 53. <u>See also</u> <u>Square Construction Co. v. Washington Metropolitan Area Transit Authority</u>, 800 F.2d 1267 (4th Cir. 1986)(imposing sanction of attorney's fees on prevailing party for "obdurate, obstinate, and vexatious conduct."); <u>Lipsig v. National Student Marketing Corp.</u>, 663 F.2d 178, 182 (D.C. Cir. 1980) ("[E]ven a winner may have to pay obstinacy fees."); 10 Moore's Federal Practice § 54.171(2)(c)(iv)("[W]hen a prevailing party has been guilty of bad faith in some discrete portion of the litigation, fees may be assessed against that prevailing party under the bad faith exception."). Thus, the Court must consider whether the record in this case establishes that Rambus spoliated evidence and otherwise litigated in bad faith by asserting its counterclaims.

## CONCLUSION

For the foregoing reasons, the Court finds that Samsung is a prevailing party under 35 U.S.C. § 285, and that, in any event, the request for sanctions under the inherent powers necessitates a decision as to whether Rambus spoliated evidence and conducted litigation in bad faith by pressing its counterclaims. Those issues are addressed in separate opinion.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.


_____          _____/s/_____
                                         Robert E. Payne
                                         United States District Judge


Richmond, Virginia
Date: July 18, 2006